HARRIS, Presiding Judge.
Under an indictment charging murder in the first degree appellant was convicted of murder in the second degree and the jury fixed his punishment at thirty years in the penitentiary. At arraignment, in the presence of counsel, appellant pleaded not guilty. After sentence was imposed, appellant gave notice of appeal. He was found to be indigent and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The sufficiency of the evidence was raised by motion for a new trial on the ground that the State presented no evidence going to show that appellant intentionally killed Arthur Gaines who was seventeen years of age at the time of his death. Appellant conceded that the evidence adduced by the State would support a conviction of manslaughter but not murder in the second degree.
The State’s evidence proved that Arthur Gaines died as the result of a gunshot wound to the head and that the fatal shot was fired by appellant. The testimony of two eyewitnesses, however, was in conflict as to whether appellant aimed and fired or whether the gun went off as appellant was swinging it at the deceased. The evidence presented on behalf of the appellant tended to show the shooting was accidental. This evidence consisted primarily of the testimony of a psychologist that appellant suffered varying degrees of impairment in the use of both his left and right hands and appellant’s own testimony that the gun went off accidentally.
Juanita Gaines, mother of the deceased, Arthur Gaines, testified that, on Sunday, September 11, 1977, she last saw her son alive at 9:30 a. m., and that he was seventeen years old at the time of his death.
The deputy coroner of Jefferson County testified that, on September 11, 1977, he examined the body of a black male identified as Arthur Ticking Gaines at Carraway Hospital. He testified that at the autopsy performed later the cause of death was determined to be a gunshot wound to the head and that the wound was not a contact wound. The point of entry was the left eyebrow.
On cross-examination the coroner testified that in his opinion the wound was not consistent with the type of wound made by the accidental discharge of a gun being swung in the air.
Shirley Roper testified that, on September 11, 1977, at approximately 10:30 a. m., she drove into the Citgo Service Station managed by appellant to get gas and transmission fluid. She testified that while appellant was in the station office getting change for her, a little boy pulled up on a bicycle and went to a telephone booth on *1113 the wall outside the service station;» She was getting out of her car when she saw appellant talking to the little boy. She testified that appellant said, “You black S.O.B., you’re the same one who stole my money last Sunday, but you won’t get a chance to do it this time,” and that he then raised his gun and shot him. At the time of the shooting appellant was standing in the doorway of the service station and the deceased was standing a few feet away straddling his bicycle.
After the deceased was shot he fell off his bicycle and Shirley Roper told appellant to call an ambulance saying, “the boy is dying.” Appellant responded by saying, “he ought to die.”
On cross-examination Ms. Roper testified that appellant was not swinging the gun when it went off but that he aimed it and fired it. Inconsistencies were brought out between her testimony at trial and her earlier statement given to police regarding details of the incident. Ms. Roper admitted that she had a prior petty larceny conviction as well as federal convictions for mail theft and cheek forgery. She denied that her testimony against appellant was influenced by charges of grand larceny pending against her at the time.
Walter Burton testified that, at approximately 10:30 a. m., on September 11, 1977, he went to appellant’s service station to get a pack of cigarettes. He substantiated Ms. Roper’s testimony that appellant accused the deceased of having stolen forty dollars from him previously and testified that the boy stated, “I didn’t get your money. You have got me wrong, Mister.” Appellant then turned to go to the cash register and came out with a pistol. This witness testified that appellant came out closer to the deceased, swung at him and all at once he heard the pistol fire.
Officer Fred R. Hedgeteth of the Birmingham Police Department testified that he recovered a .22 caliber revolver at the scene which he turned over to the evidence technician of the Birmingham Police Department. On cross-examination he testified that appellant never tried to leave the scene and that appellant told him where the weapon could be found.
Officer Leonard M. Robbins, evidence technician, testified that he received a .22 caliber revolver from Officer Hedgeteth and the weapon was admitted into evidence.
Daño Leli, clinical psychology intern, testified on behalf of appellant that he had administered a neuro-psychological test battery to appellant. His clinical findings were that as a result of a stroke appellant suffered from kinestesis due to severe impairment in functioning of the left hand and mild impairment in functioning of the right hand. Mr. Leli testified that the effect of this condition is that appellant has very little coordination in his arms and hands and that he is unable to know what his arms and hands are doing when he is not looking at them. On cross-examination he testified that it would be possible for a person suffering from such a condition to be unable to control a gun held in his hand and that if he was not watching the pistol, it could accidentally go off.
Appellant Lincoln Maddox testified in his own behalf. He admitted shooting Arthur Gaines but testified that he had not intended to shoot him. It was appellant’s testimony that two weeks prior to the shooting the deceased had taken over forty dollars from the cash register at the service station. When the deceased returned to the station on the day of the shooting, appellant confronted him and accused him of having taken the money earlier. He got out his gun, which was already cocked due to appellant’s inability to cock it himself. He testified that he reached at the deceased with his hand trying to hold him but Gaines resisted him, pulling back. Appellant testified that he swung the gun trying to get the deceased into the station and that it was his intention to lock him in the station until he could call the police. While he was swinging his hand out with the gun in it, the gun went off.
Appellant testified that when he realized he had shot the boy he called for police and an ambulance, and then waited until the police arrived. Appellant testified to dis *1114 ability in his left side and right hand due to a stroke which had left him partially paralyzed.
On cross-examination appellant testified that when the deceased came to the station on the day of the shooting he recognized him as the person who had taken the money two weeks before. Appellant admitted that he had not called the police when the money was taken, because at the time the telephone was out of order and he was unable to leave the station to get to a telephone. The earlier incident was never reported to the police.
The evidence was uncontroverted that appellant, Lincoln Maddox, shot and killed Arthur Ticking Gaines. There was conflicting evidence on the question of whether the killing was accidental or intentional. This presented a question for the jury to resolve and the verdict rendered thereon will not be disturbed on appeal. Young v. State, Ala.Cr.App., 346 So.2d 509.
In a prosecution for murder it is for the jury to determine the claim of the accused that the shooting was accidental. Harrell v. State, 160 Ala. 91, 49 So. 805; Powell v. State, 219 Ala. 557, 123 So. 34; Macon v. State, 36 Ala.App. 651, 63 So.2d 32; McMillan v. State, 44 Ala.App. 216, 205 So.2d 603; Smith v. State, 54 Ala.App. 96, 304 So.2d 914.
Appellant urges on appeal that this court find reversible error in the trial court’s refusal to give appellant’s requested charge number 6 as follows:
“An unintentional killing of a human being arising from a wanton, or reckless use' of firearms, in absence of intent to discharge the weapon and under circumstances not evidencing a heart devoid of sense of social duty, is manslaughter, and may be classified as voluntary or involuntary as circumstances of the case dictate.”
Three grounds are set forth in support of this contention: (1) The charge was a correct statement of the law, (2) It was not substantially covered by the Court’s oral charge, and (3) Refusal of the correct charge as applied to a particular phase of the evidence is error, even though covered by general charges based on general principles.
The precise language of requested charge number 6 was held to correctly state the law as applied to a jury charge on the phase of evidence tending to show accidental discharge of a gun in a homicide prosecution. Garrett v. State, 268 Ala. 299, 105 So.2d 541. While a requested charge must of course correctly state the law in order to be given, refusal will not warrant reversal on that basis alone.
The rule of law governing reversal for refusal of a charge which correctly states the law is statutory and is found under Code of Alabama 1975, § 12-16-13, as follows:
“. . . The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s general charge or in charges given at the request of parties.
It is appellant’s contention that this statutory requirement was not met in the case at bar. We disagree. The cases are legion in this state which hold that refusal of a correct charge is not error if the same rule of law was substantially and fairly covered in the court’s oral charge. See Annotation to § 12-16-13, supra, and cases cited therein.
In its oral charge the trial court below charged the jury on all degrees of homicide. Included in the charge on manslaughter in the second degree was the following:
“The intention to take life is not necessary in the prosecution for this offense. Manslaughter in the second degree is the unlawful killing of a human being where neither death nor bodily harm was intended but death is accidentally caused by some unlawful act or an act strictly lawful in itself but done in an unlawful manner and without due caution. And without due caution means without due care.”
*1115 Requested charge number six was intended to put before the jury the rule of law that an unintentional killing resulting from the accidental, albeit reckless, use of firearms is manslaughter. This rule was amply covered by the court’s oral charge, set out above, and error cannot be predicated upon the refusal to give the requested charge. Furthermore, as the court’s oral charge fully and specifically covered the rule of law embodied in appellant’s requested charge, refusal of charge number six is not error under the rule of McKenzie v. State, 19 Ala.App. 319, 97 So. 155, cited by appellant. In McKenzie, supra, refusal of a charge termed to embrace a correct principle as applied to a particular phase of the evidence was held to be error where the court’s charge was given in general terms and based upon general principles. The court here specifically charged the jury on death accidentally caused by some unlawful act or a lawful act done without due caution. McKenzie, supra, therefore has no application in this case.
This was a senseless killing of an unarmed youth who was still on his bicycle and had not provoked any difficulty by word or deed at the time appellant gunned him down.
A careful search of the record reveals no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.