Stephen Timothy Kirkpatrick was indicted and convicted for the murder of Corey Miles Hoffman, a 15-month-old infant, "by blow or blows to the head and neck area, with hand or other instrument, in violation of § 13A-6-2 of the Code of Alabama [1975]. . . ." The sentence was life imprisonment. Three issues are raised on appeal.
 I
Kirkpatrick contends that the trial court erred in refusing to instruct the jury on the lesser included offense of manslaughter because 1) evidence presented to the jury included a basis for it to find that Kirkpatrick "recklessly caused the death of another person", and 2) the prosecution argued that Kirkpatrick, while in a fit of passion or frustration, beat the victim to death.
It would appear that this issue has not been properly preserved for appeal. Kirkpatrick failed to include in any of his 31 written requested charges a request that the court instruct the jury on the lesser included offense of manslaughter. Kirkpatrick, moreover, failed to orally request a manslaughter charge during the charge conference. Only after the court delivered its oral charge to the jury did Kirkpatrick orally request that the court instruct the jury on the lesser included offense of manslaughter.[1]
In Connolly v. State, 500 So.2d 68, 69 (Ala. 1986), the Supreme Court of Alabama held that "according to Temporary Rule 14, A.R.Crim.P., an oral objection to the omission of a jury instruction is sufficient to preserve error on appeal, even though the instruction was not submitted in writing,but was orally requested." (Emphasis added.) InConnolly, prior to the court's oral charge, defense counsel requested the court to give an instruction on the lesser included offense of murder. The court omitted the instruction in its charge to the jury, and defense counsel objected to the omission. The Supreme Court held that *Page 1027 
defense counsel's objection to the court's failure to charge pursuant to its oral requested charge was sufficient under Temporary Rule 14 to preserve the error for appellate review.Id.
In the case sub judice, however, defense counsel failed to request, either orally or in writing, prior
to the court's charge, that the court instruct the jury on the lesser included offense of manslaughter. Thus, underConnolly, defense counsel's request that the court charge the jury on manslaughter at the close of the court's oral charge was insufficient under Temp. Rule 14 to preserve error for appellate review.
The evidence shows that on December 5, 1988, Kirkpatrick was baby-sitting 15-month-old Corey Miles Hoffman along with his own 4-year-old son Shea and that Corey died from head injuries while in Kirkpatrick's home. The autopsy revealed that Corey sustained numerous injuries, including 1) repeated blunt force injuries to the head similar to those suffered in airplane accidents, severe car accidents, and falls from a multi-story building; 2) repeated suck-like crescentic-shaped injuries to his thigh; 3) a tear in the connective tissue between his lip and gum; 4) severe bruising on both of his shoulders; and 5) several linear injuries on his body. The evidence further showed that the repeated blunt force injuries to the top of Corey's head were the proximate cause of Corey's death and that these head injuries were inconsistent with a fall down two steps because generally in fall cases the victim sustains injuries in a "hat band" distribution encircling theforehead, not the top of the head. The evidence also showed that an instrument composed of three wooden paint stirrers that were taped together, denominated the "Butt Wamper" and found in Kirkpatrick's house, could have been used to inflict the numerous linear injuries on Corey's body, such as those in his shoulder area. Finally, the State's expert testimony also revealed that it would be extremely unlikely that a child would die as a result of a one-foot fall on concrete, even if the child landed directly on its head.
Kirkpatrick denied that he committed the crime and maintained, in various versions to numerous witnesses and at trial, that Corey sustained his head injuries when he fell down two concrete steps at Kirkpatrick's house. Kirkpatrick further testified that Corey suffered the wounds to his mouth when Corey was struck by a flashlight by Kirkpatrick's son, Shea, and that the bruises on Corey's shoulders may have been inflicted by Kirkpatrick when he rushed Corey to the police station for help. Defense counsel also presented the following alternate theories for Corey's death and injuries,none of which were caused by Kirkpatrick: 1) Corey had pre-existing head injuries which proximately caused his death when he fell down the two steps; 2) Corey's step-brother had previously abused Corey; and 3) Corey's car-seat shoulder restraints caused his shoulder bruises when Kirkpatrick had to slam on the brakes to avoid an automobile accident one week before Corey's death.
Since Kirkpatrick denied that he had committed the crime, it is apparent that under the evidence submitted by the State, Kirkpatrick was either guilty of the offense as charged or was guilty of no offense. A judge may properly refuse to charge the jury on a lesser included offense where the only reasonable conclusion from the evidence is that the defendant is guilty of the offense with which he is charged or is guilty of no offense at all. Kirksey v. State, 475 So.2d 646, 648
(Ala.Cr.App. 1985).
As the trial court noted, moreover, there was absolutely no evidence presented that Kirkpatrick either recklessly caused Corey's death or caused Corey's death while acting in a sudden heat of passion caused by any provocation recognized by law. Although Kirkpatrick contends that the prosecutor in his closing argument stated that Kirkpatrick beat Corey while in a fit of passion or frustration, Kirkpatrick failed to include in the record on appeal the prosecutor's closing argument. We note that counsel's closing arguments do not constitute evidence to be considered by the jury in reaching its verdict. Hence, under the *Page 1028 
evidence presented in this case, Kirkpatrick was not entitled to jury instructions concerning any lesser included offenses.See Phelps v. State, 435 So.2d 158 (Ala.Cr.App. 1983).
 II
Kirkpatrick contends that the trial court erred in either refusing to admit into evidence certain medical articles under the "learned treatise" exception to the hearsay evidence rule or refusing to allow defense counsel to use the articles for purposes of cross-examination only.
"The rule in Alabama, generally, is that 'a learned treatise, essay, or pamphlet on a subject of science or art, which is testified to by an expert on the subject as being a standard or trustworthy authority on the subject, is admissible as an exception to the hearsay evidence rule.' " Johnson v.McMurray, 461 So.2d 775, 779 (Ala. 1984) (quoting C. Gamble, McElroys Alabama Evidence § 258.01(1) (3d ed. 1977)).
In Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953), the Supreme Court held that where the work in question was not shown to be a standard work or recognized authority by the medical profession on the subject at issue, defense counsel was unable to cross-examine a medical expert concerning statements contained in the work in question. In Brooks v. State,418 So.2d 195, 197 (Ala.Cr.App. 1982), this court held that although a witness may be cross-examined from a learned treatise, the proper predicate must be established. InHarrison v. Wientjes, 466 So.2d 125, 127 (Ala. 1985), the Supreme Court held that whether or not a treatise which has been properly authenticated is introduced into evidence, the defendant still has the option of using the treatise on cross-examination to impeach or discredit the expert's testimony.
In the case at bar, defense counsel sought to admit into evidence, and to cross-examine the medical experts on, certain articles printed in Pediatrics magazine published by the American Academy of Pediatrics and the "Morbidity and Mortality Weekly Report" ("MMWR") published by the Center for Disease Control. The articles discussed a 1977 study of playground-related injuries of preschool children conducted by the United States Product Safety Commission.
Counsel for the parties were permitted to ask questions of the medical experts on voir dire to establish whether the various articles were recognized as standard authorities, and the trial court conducted further painstaking inquiry. In particular, Dr. Vanlandingham, the emergency room physician who first examined Corey, stated that the MMWR pamphlet was not recognized as a standard authority on injuries or trauma and was not recognized as a treatise on medical injuries. In response to the court's inquiry, Dr. Vanlandingham further stated that he was not a pediatric neurosurgeon and that a pediatric neurosurgeon would be the proper expert to say whether the MMWR pamphlet was standard and authoritative.
When questioned about the pediatric magazine, Dr. Vanlandingham first stated that he was not a pediatrician but that as far as magazines are standard and authoritative, he thought that this magazine would be one that pediatricians would respect. In further response to the court's inquiry, Dr. Vanlandingham stated that he did not know that any particular magazine, weekly report, or particular isolated article was usually accepted as an authoritative reference until after the article had been evaluated and incorporated into a textbook.
Dr. Wanger, the pathologist who performed the autopsy, stated that he did not think any publication or journal or article appearing therein was authoritative because researchers sometimes discover flawed methods in the studies that detract from the validity of the results.
It is abundantly clear from the expert's testimony that neither the specific articles nor the periodicals in which they were printed are recognized as standard or trustworthy authorities in the medical profession. Because the proper predicates were not established, the trial court was correct in refusing to admit the articles into evidence or to permit defense counsel to cross-examine *Page 1029 
the medical experts with the articles.
 III
Kirkpatrick contends that the trial court erred in allowing the State to use and admit certain photographs and a letter in violation of the court's pre-trial discovery order.
 A
Kirkpatrick first contends that the trial court erred when it admitted into evidence a wallet-size photograph of the victim taken one month before he died because the photograph was not made available to Kirkpatrick until after the jury was selected on September 25, 1989.
The record reveals that the prosecution did not receive possession of the photograph until September 25, 1989, when Corey's father, who had just arrived from Wisconsin for the trial, provided the State with the photograph. The record further reveals that as soon as the prosecutor obtained possession of the photograph, he provided it to Kirkpatrick in compliance with Temporary Rule 18.3, A.R.Cr.P., which provides:
 "Subsequent to compliance with an order pursuant to Temporary Rule 18.1 or 18.2, and prior to or during trial, if a party discovers additional evidence or decides to use additional evidence, which information has been subject to discovery under this rule, that party shall promptly notify the court and the opposing party of the existence of the additional evidence to allow the court to modify its previous order for additional discovery or inspection."
In Sims v. State, 485 So.2d 793 (Ala.Cr.App. 1986), this court held that the admission of "before" and "after" photographs of the victim which came into the State's possession on the morning of trial was not error because the State complied with Temp. Rule 18.3 by allowing the defendant to view them as soon as the photographs came into the State's possession. Likewise, in the instant case, the trial court's ruling that the prosecutor could use the photograph subject to proof at trial of a proper foundation was proper because the prosecutor clearly complied with Temp. Rule 18.3.
 B
Kirkpatrick also argues that three photographs of the steps and adjoining premises in Kirkpatrick's house which were provided to Kirkpatrick during the trial on Monday, October 2, 1989, should not have been admitted into evidence.
The record reveals that on Friday, September 29, 1989, during presentation of the defendant's case, the jury was transported to Kirkpatrick's house to view the two concrete steps down which Corey allegedly fell. The prosecutor then had three photographs of the steps and adjoining premises taken over that weekend and provided the photographs to Kirkpatrick on Monday, October 2, 1989, before the trial resumed. Kirkpatrick objected to the photographs on the ground that the photographs were taken over the weekend and that he had not seen them before that Monday. The State argued that the photographs, which were taken over the weekend, were provided to Kirkpatrick on Monday morning in compliance with Temp. Rule 18.3, A.R.Cr.P., and that the jury had already viewed the crime scene and had seen the stairs the previous Friday. In particular, the State contended that defense counsel gave Kirkpatrick's house key to the State so the photographs could be taken.
We hold that the State fully complied with Temp. Rule 18.3 by promptly notifying Kirkpatrick and the trial court of the photographs as soon as the photographs were in the State's possession. We note, moreover, that because the jury had already viewed the scene depicted in the photographs, the photographs were merely cumulative and could not surprise or prejudice Kirkpatrick. Hence, the trial court's ruling allowing their admission into evidence was without error.
 C
Finally, Kirkpatrick contends that the trial court erroneously permitted Dr. *Page 1030 
Wanger to testify from a personal letter from Dr. Wanger to the prosecutor that had not been produced pursuant to the pre-trial discovery order. The letter summarized the results of an attached lab report and indicated that the prosecutor could contact Dr. Wanger if further assistance was needed.
The prosecutor argued that the attached lab report was provided to Kirkpatrick but that the cover letter was a personal letter from the expert to him and was excluded from discovery by Temp. Rule 18.1(c)(1), A.R.Cr.P. We agree.
Temporary Rule 18.1(c)(1), A.R.Cr.P., provides that: "the defendant shall not be permitted to discovery or inspect reports, memoranda, witness lists, or other internal state documents made by the district attorney or his agents, or by law enforcement agents, in connection with the investigation or prosecution of the case, or statements made by state witnesses or prospective state witnesses. . . ."
Temporary Rule 18.1(e), A.R.Cr.P., also states: "Except as provided in (a), (b), and (d), the discovery or inspection of reports, memoranda, witness lists, or other internal state documents made by the district attorney or his agents, or by law enforcement agents, in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses, is not authorized."
In the instant case, the prosecutor fully complied with Temp. Rule 18 by producing Dr. Wanger's complete report. The transmittal letter from Dr. Wanger to the prosecutor, however, constituted an internal state document or memorandum made by an agent of the district attorney and was therefore not subject to discovery under Temp. Rule 18.1(c)(1), (e). And as noted by the trial court, the information in the cover letter had already been provided to Kirkpatrick, so any arguable error was harmless.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Supreme Court Justice, and his opinion is hereby adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, P.J., TYSON, J., and McMILLAN, J., concur.
BOWEN, J., concurs in result with opinion, with PATTERSON, J., joining.
[1] We note that the trial court's refusal to charge the jury on the lesser included offense of criminally negligent homicide as orally requested by Kirkpatrick was not raised on appeal.