The appellant, Reginald Molton, was convicted of murder and was sentenced to 25 years' imprisonment. Two issues are raised on this appeal from that conviction.
 I
The appellant contends that the trial court erred in refusing to give his written requested charge on criminally negligent homicide.
Demetrius Wiley, the State's only eyewitness, testified that he went to the appellant's apartment in Birmingham, Alabama, sometime after midnight on the morning of December 14, 1991. According to Wiley, he and the appellant were drinking beer and watching a televised basketball game when Rafael Heflin knocked on the door of the apartment. Wiley stated that he had known Heflin, who had had three children with one of Wiley's cousins, since he "was little," R. 89, and that he told the appellant that Heflin was related to him when the appellant asked Heflin who he was. Wiley testified that Heflin then asked the appellant, "Are you straight?" to which the appellant replied, "Yeah, I'm straight. I got dimes." R. 77.
The appellant and Heflin stepped into the kitchen. Although Wiley remained in the living room, he stated that he observed the appellant take two rocks of crack cocaine out of his pocket and hand them to Heflin, who "switched on him." R. 77. When asked to explain, Wiley said that Heflin "swapped fake dope for the real dope." Id. Wiley stated that when the appellant demanded that Heflin either pay him for the cocaine or return the rocks of cocaine that he had given Heflin, Heflin "hesitated about giving him the money" and the appellant "grabbed him," and "then they struggled." R. 79. Wiley said that during this struggle the appellant pulled a pistol and aimed at Heflin's face several times and attempted to shoot Heflin, but the gun did not fire. On "the fourth or fifth" attempt, the gun fired, hitting Heflin in the neck. R. 81. While the appellant and Heflin were struggling, Wiley heard Heflin tell the appellant a number of times not to shoot him and also heard the appellant tell Heflin several times to let him go.
Wiley stated that, after the appellant's gun fired, Heflin, holding his neck, bent over to pick up a rock of cocaine and "put it in his side corner pocket" before running out of the apartment. R. 83. As he was leaving, Heflin made a coughing sound and said, "Something's wrong with me." R. 84. According to Wiley, the appellant ran after Heflin and fired his gun as Heflin fled the apartment.
Heflin's body was discovered that afternoon in an alley approximately a half-block to a block away from the appellant's apartment. Dr. Robert Brissie, the forensic pathologist who performed the autopsy, testified that Heflin died from a gunshot wound to the neck. Dr. Brissie estimated that the fatal shot was fired from a distance of 7 to 15 *Page 665 
inches from Heflin's body. A "small green ziplock bag with two bits of apparent rock-like white substance" was found in the right front pocket of Heflin's jeans. R. 46.
The appellant was charged with intentional murder as defined in Ala. Code 1975, § 13A-6-2(a)(1). At trial, he submitted written requested charges on self-defense; reckless manslaughter, see § 13A-6-3(a)(1); heat of passion manslaughter, see § 13A-6-3(a)(2); and criminally negligent homicide, see § 13A-6-4(a). C.R. 31-33. At the charge conference, the trial court stated that it would instruct the jury on self-defense and on heat of passion manslaughter, but that it was rejecting the appellant's requested charges on reckless manslaughter and criminally negligent homicide. Defense counsel assented to the trial court's decision regarding the charge on reckless manslaughter, but excepted to the court's refusal to charge on criminally negligent homicide and argued that the evidence supported such a charge. R. 131-32.
The State argues that because defense counsel stated, "Defense is satisfied," R. 145, at the conclusion of the oral charge, this issue was not properly preserved for appellate review. We cannot agree. In Williamson v. State, 570 So.2d 722,722-23 (Ala.Cr.App. 1990), reversed in part on other grounds,584 So.2d 1289 (Ala. 1991), defense counsel requested a charge on a lesser included offense, which was rejected by the trial court in a discussion held "prior to the oral charge." 570 So.2d at 722. During that discussion, defense counsel stated why he thought the requested charge should be given. On appeal, "[t]he State argue[d] that th[e] issue [of the trial court's refusal to give the requested charge] was not preserved because the appellant announced, at the close of the trial court's oral charge, that he was 'satisfied.' " Id. This Court held that the issue "was sufficiently brought to the trial court's attention [during the pre-charge discussion] and was preserved." Id. at 723. In the present case, defense counsel's objection made at the charge conference to the court's refusal to give the written requested charge was sufficient, under Williamson, to preserve the issue.
The State contends that Williamson is distinguishable from the present case because the trial judge in this case "indicated that he was open to changing his ruling," but the appellant did not again request an instruction on criminally negligent homicide. Appellee's brief at 10. The charge conference was held at the close of the State's case. As noted above, defense counsel excepted to the trial court's refusal to charge on criminally negligent homicide, then argued that the evidence warranted such a charge. After defense counsel's argument, the trial court stated:
 "Unless there's something, and, I don't know yet what the defense is going to put on; unless there's some other evidence that might change my mind, I'll, of course, keep an open mind in that regard. This won't be the final ruling until I've heard everything. If there's something else you want to put on, I'll sure listen to it."
R. 132 (emphasis added). The trial judge's "indicat[ion] that he was open to changing his ruling" was clearly conditioned upon the appellant's presentating other evidence. The appellant rested almost immediately after this statement by the trial court and without presenting any additional evidence whatsoever. R. 133. Consequently, the trial court had "heard everything" at the time of its ruling at the charge conference and it was unnecessary for the appellant to renew his objection to the trial court's refusal to give the requested charge. SeeWilliamson, 570 So.2d at 723. See also Norsworthy v. State,542 So.2d 950, 952 (Ala.Cr.App. 1989) (indicating that objection at charge conference to trial court's refusal to charge on lesser offense would have been sufficient to preserve issue).
In Sartin v. State, 601 So.2d 1142, 1146 (Ala.Cr.App. 1992), this Court stated:
 "To preserve th[e] issue [of the trial court's refusal to charge the jury on a lesser included offense] for appellate review, defense counsel must request, either orally or in writing, that the court give an instruction on a specific lesser included *Page 666 
offense before[1] the court's charge to the jury, and defense counsel must also object to the court's failure to include the requested lesser included offense charge at the close of the court's charge."
(Original emphasis deleted; current emphasis and footnote added.) The emphasized language of Sartin clearly conflicts with Williamson and is inconsistent with Rule 21.2, A.R.Crim.P., which requires only that objections to the trial court's oral instructions, including objections to the refusal to give a written requested instruction, be made "before the jury retires to consider its verdict." See H. Maddox, AlabamaRules of Criminal Procedure § 21.0 at 238 (Supp. 1993) ("[i]f a defendant wishes to preserve the issue of the trial court's failure to instruct the jury on lesser included offenses, then defendant must specifically object at trial or the issue is waived") (emphasis added). While a specific objection made at the charge conference is sufficient to preserve the issue under Rule 21.2, it would not be sufficient to preserve the issue under Sartin. We therefore overrule Sartin to the extent that it conflicts with Williamson and we now specifically hold that where, as in this case, a defendant clearly objects at the charge conference to the trial court's refusal to give a written requested charge and states specific reasons for that objection, he is not required to renew his objection at the close of the oral instructions to preserve that issue for appellate review. Cf. Tillman v. City ofEnterprise, 627 So.2d 1160, 1161 (Ala.Cr.App.) ("[a] ruling on a pretrial motion to suppress is sufficient to preserve the issue [of whether the evidence is admissible] for this Court's review and it renders it unnecessary for the appellant to object again when the evidence is offered and admitted at trial"), cert. denied, 627 So.2d 1162 (Ala. 1993).
Having determined that this issue was properly preserved for appellate review, we now turn to the merits of the appellant's claim. Although the appellant did not testify or call any witnesses in his behalf, defense counsel's cross-examination of Wiley was clearly an attempt to elicit testimony to support a claim that the appellant acted either in self-defense or in the heat of passion, having been provoked by Heflin's "switching" of his drugs.[2] The opening and closing arguments of counsel are not contained in the transcript; therefore we do not know the actual theory of defense relied on by the appellant.
It is clear that " 'a charge on a lesser included offense is not proper unless there is a reasonable theory from the evidence to support such a proposition.' " Isom v. State,497 So.2d 208, 210 (Ala.Cr.App. 1986) (quoting Clark v. State,451 So.2d 368, 373 (Ala.Cr.App. 1984)). Accord Garrick v. State,589 So.2d 760, 764 (Ala.Cr.App. 1991). In a homicide prosecution,
 "[a]n instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendant's inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of. . . . To warrant the giving of such an instruction there must be some evidence that the defendant was not aware of the risk he was creating."
Wiggins v. State, 491 So.2d 1046, 1048 (Ala.Cr.App. 1986) (emphasis in original). See *Page 667 
also Ala. Code 1975, §§ 13A-6-4(a); 13A-2-2(4). Where, as in the present case, the evidence establishes only that the "defendant intentionally fired his pistol either at or in the direction of another human being," such "conduct excludes the possibility of negligent or inadvertent risk creation" and there is "simply no rational basis for a verdict of criminally negligent homicide."Lawson v. State, 476 So.2d 116, 119 (Ala.Cr.App.), cert. quashed, 476 So.2d 122 (Ala. 1985). Accord Robinson v. State,441 So.2d 1045, 1047 (Ala.Cr.App. 1983). Cf. Harper v. State,534 So.2d 1137, 1139 (Ala.Cr.App. 1988) (where appellant pointed a gun at victim and shot him, "[h]er actions were undoubtedly intentional, and she was not entitled to a jury instruction based on 'reckless' behavior"). Under the facts of this case, there was no error in the trial court's refusal to instruct the jury on criminally negligent homicide.
 II
The appellant argues that he was denied his Sixth Amendment right to the assistance of conflict-free counsel because, during the pendency of the proceedings against him, his retained trial counsel represented the State's only eyewitness, Demetrius Wiley, in probation revocation proceedings and was successful in having Wiley's probation continued.
The instant offense occurred on December 14, 1991. A warrant for the appellant's arrest was issued on December 16, 1991, and the appellant was arrested that day. Criminal proceedings against the appellant began in the district court on January 6, 1992, and were concluded on March 11, 1992, when the appellant waived a preliminary hearing and was bound over to the circuit court to await the action of the grand jury. C.R. 13. Connie Parsons is listed on the district court case action summary sheet as the appellant's attorney. Id. From this we may assume that Mr. Parsons was retained by the appellant sometime between December 16, 1992, and March 11, 1992.
In circuit court, Mr. Parsons filed a motion to withdraw, stating the following grounds:
 "1. That the Defendant has not fulfilled the contractual obligations agreed upon by the Defendant and the undersigned.
 "2. That the undersigned was appointed to represent one of the State's key witnesses on a probation violation charge.
 "3. That the undersigned believes that a cross-examination confrontation between the mentioned State's witness and the undersigned would not be in the best interest of the Defendant."
C.R. 20. The certificate of service on this motion recites that a copy was mailed to the appellant and to the district attorney's office on July 24, 1992. C.R. 21. The address given for the appellant on this certificate of service is "931-24th Street South, Birmingham." Id.
While the date that this motion was filed does not appear in the record, the case action summary reflects that the motion was granted on July 24, 1992. C.R. 1. However, an entry on the case action summary dated August 7, 1992, recites that "Attorney Parsons withdraws his motion to withdraw." C.R. 1. There is no indication in the case action summary that a hearing was held on either the motion to withdraw or the withdrawal of that motion. However, another case action summary entry for August 7, 1992, recites that the appellant, while "in open court in his own proper person and accompanied and represented by his counsel," applied for youthful offender treatment. C.R. 2. On the "Court Ordered Probation Services" form, which is dated August 7, 1992, and which is signed by the appellant and trial counsel Parsons, the appellant's address is given as "757-47th Way South — B'ham." C.R. 22.
A hearing on the youthful offender application was set for October 19, 1992, and was then continued until February 8, 1993. C.R. 2. The appellant's application for youthful offender treatment was denied on Monday, February 8, 1993, and his trial began immediately thereafter. The circuit judge who denied the appellant's youthful offender application and who presided over the appellant's trial was a different circuit judge than the judge who had handled all matters prior to that time.
Mr. Parsons represented the appellant during the two-day trial, which concluded on February 9, 1993. Sentencing was set for *Page 668 
March 26, 1993. R. 147; C.R. 3. Appellate counsel, Scott Boudreaux, filed a notice of appearance on March 23, 1993, and sentencing was continued until April 23, 1993, and then again until June 4, 1993. C.R. 4. The appellant was sentenced on June 4, 1993.
On June 7, 1993, Mr. Boudreaux filed a motion for a new trial containing an allegation that "trial counsel for the defendant [had] had a conflict of interest which he failed to timely disclose to the defendant and which was not waived by the defendant." C.R. 27. A hearing was held on this motion on June 10, 1993. At the request of appellate counsel Boudreaux, the trial court took judicial notice of the fact that the "youthful offender file on Demetrius Wiley" reflected that a guilty plea was entered by Wiley on December 5, 1991, at which time Wiley "was represented by Michael Chambers." R. 16061. The trial court also took judicial notice of the fact that the Wiley file reflected that on June 9, 1992, Connie Parsons was appointed to represent Wiley at probation revocation proceedings[3] and that Mr. Parsons "successfully defended" Wiley in these proceedings and "was successful in having [Wiley] continued on probation." R. 162. The court further noted that "that disposition was on June 30, 1992." Id.
No other evidence was offered at the hearing on the motion for a new trial. Trial counsel Parsons was not called as a witness and does not appear to have been present at the hearing. Appellate counsel Boudreaux argued that the appellant was due a new trial because Mr. Parsons had not disclosed "material fact[s]" regarding his conflict of interest and the conflict "certainly was not waived by this defendant because he had no knowledge of it." R. 164-65. The assistant district attorney who tried the case stated that the alleged conflict of interest "was news to [her] back when Mr. Boudreaux informed [her] of this." R. 162-63. We note that no one mentioned at this hearing the facts that Mr. Parsons had filed a pre-trial motion to withdraw as counsel, that that motion had been granted by the original trial court, and that that motion had then been withdrawn by Mr. Parsons.
It is "a basic constitutional precept" that those prosecuted for criminal offenses have a right to the assistance of counsel during the proceedings. Pinkerton v. State, 395 So.2d 1080,1085 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 1090 (Ala. 1981). "Where a constitutional right to counsel exists, [the United States Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261,271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). "[T]he importance of ensuring that defense counsel is not subject to any conflict of interest which might dilute loyalty to the accused has been long and consistently recognized." Douglas v.United States, 488 A.2d 121, 136 (D.C.App. 1985). More than 45 years ago, the United States Supreme Court declared: "The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of hisclient." Von Moltke v. Gillies, 332 U.S. 708, 725,68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (emphasis added). The right to conflict-free counsel applies whether counsel is appointed or retained. See Cuyler v. Sullivan, 446 U.S. 335, 343-45,100 S.Ct. 1708, 1715-16, 64 L.Ed.2d 333 (1980).
Just as there is no per se constitutional violation in "[r]equiring or permitting a single attorney to represent codefendants," Holloway v. Arkansas, 435 U.S. 475, 482,98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), "there is no per se rule prohibiting representation of the defendant by counsel who has previously represented a government witness," United Statesv. Bowie, 892 F.2d 1494, 1502 (10th Cir. 1990). However, where counsel who has previously represented a prosecution witness subsequently represents the defendant against whom the witness is to testify, the potential for a conflict of interests exists in "that defense counsel may not be able to effectively cross-examine the witness for fear of divulging privileged information." *Page 669 Id. at 1051. This same concern, as well as other rather obvious concerns, arise when counsel simultaneously represents the defendant and a prosecution witness. See, e.g., Rosenwald v.United States, 898 F.2d 585, 587-88 (7th Cir. 1990); Pinkertonv. State, 395 So.2d at 1086; People v. Wandell, 75 N.Y.2d 951,555 N.Y.S.2d 686, 686-87, 554 N.E.2d 1274, 1274-75 (1990). Whether counsel's representation of the witness occurs before or is simultaneous with the representation of the defendant, the "potential for conflict is great where there is a substantial relationship" between the two cases. United Statesv. Bowie, 892 F.2d at 1502.
The appellant did not raise the matter of a conflict of interest on the part of his trial counsel until well after the trial. Consequently, "[i]n order to establish a violation of the Sixth Amendment, . . . [he] must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. at 348,100 S.Ct. at 1718. Accord Williams v. State, 574 So.2d 876, 878 (Ala.Cr.App. 1990). To prove that an actual conflict adversely affected his counsel's performance, a defendant must make a factual showing "that his counsel actively represented conflicting interests,"Cuyler v. Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719, " 'and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." ' " Barham v. United States, 724 F.2d 1529, 1532
(11th Cir.) (quoting United States v. Mers, 701 F.2d 1321, 1328
(11th Cir. 1983)), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687,81 L.Ed.2d 882 (1984). Once a defendant makes a sufficient showing of an actual conflict that adversely affected counsel's performance, prejudice under Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) — i.e, "that, but for counsel's unprofessional errors, the result of the proceeding would have been different" — is presumed.Strickland, 466 U.S. at 694, 692, 104 S.Ct. at 2068, 2067. SeeUnited States v. Winkle, 722 F.2d 605, 610 (10th Cir. 1983);Williams v. State, 574 So.2d at 878.
At the hearing on his motion for a new trial, the appellant established only that trial counsel Parsons represented State's witness Demetrius Wiley in probation revocation proceedings during the pendency of the appellant's case and that Parsons was successful in his representation of Wiley. There was no showing that Wiley's probation revocation hearing was in any way related to the appellant's case or "that counsel actually learned particular confidential information during [his] representation of [Wiley] that was relevant to the [appellant's] case." Williams v. State, 574 So.2d at 878. Compare Pinkerton v. State, 395 So.2d at 1082 (defense counsel also represented informant who testified against defendant after helping make case against defendant "in exchange for a recommendation of reduced sentences for himself and his wife"; informant had not been sentenced at time of defendant's trial; and "in some measure any recommendation as to [informant's and wife's] sentences was to be based upon the success of [informant's] informer activities"). Nor was there any showing that trial counsel's cross-examination of Wiley was impaired in any manner.[4]
There is language in Pinkerton v. State, 395 So.2d at 1086, indicating that the simultaneous representation of the defendant and a prosecution witness, in and of itself, constitutes an actual conflict. See also People v. Wandell, 555 N YS.2d at 686-87, 554 N.E.2d at 1274-75. It is clear, however, that Pinkerton involved much more than a mere showing of simultaneous representation of the defendant and a prosecution witness: The witness testifying against the defendant had previously pleaded guilty to narcotics charges and, "in exchange for a recommendation of reduced sentences for himself and his wife," had agreed to act as an informant and to assist the authorities in making drug cases against other persons. 395 So.2d at 1082. One of the drug cases the witness-informant assisted in making was the one against the defendant. The witness-informant had not *Page 670 
been sentenced at the time of the defendant's trial and "in some measure, any recommendation as to [his and his wife's] sentences was to be based upon the success of [the witness-informant's] informer activities." Id. That an actual conflict existed in Pinkerton was clearly demonstrated.
Pinkerton did not cite Cuyler v. Sullivan, although it was released subsequent to Cuyler. Later federal cases relying onCuyler have indicated that even defendants alleging a conflict of interest based on simultaneous representation of a prosecution witness must demonstrate an actual conflict through a showing of specific facts. See, e.g., Rosenwald v. UnitedStates, 898 F.2d at 587-88; Barham v. United States, 724 F.2d at 153133. We need not resolve this conflict in this case because, even assuming that the appellant has demonstrated an actual conflict of interest, he has clearly failed to show that that conflict adversely affected trial counsel's performance. Under the particular facts of this case, however, his failure to do so is not dispositive of the issue. This Court is troubled by the fact that, several months after having been retained by the appellant, but before the appellant's trial, trial counsel accepted an appointment to represent a crucial[5]
prosecution witness against the appellant. As the Eleventh Circuit Court of Appeals has observed: "In the abstract, or the hypothetical, it is not a good idea at all" for counsel to simultaneously represent a defendant and a prosecution witness who is to testify against that defendant. Barham v. UnitedStates, 724 F.2d at 1533. See generally Rule 1.7, Rule 1.9, A.R.Prof.Cond. "Defense counsel have an ethical obligation to avoid conflicting representations," Cuyler v. Sullivan,446 U.S. at 346, 100 S.Ct. at 1717, and have the further "obligation, upon discovering a conflict of interests, to advise the court at once of the problem," Holloway v. Arkansas,435 U.S. at 485-86, 98 S.Ct. at 1179.
Unless made for obviously dilatory reasons, an attorney's request to withdraw, "based on his representations as an officer of the court regarding a conflict of interests,[6] should be granted." Holloway v. Arkansas, 435 U.S. at 485,98 S.Ct. at 1179 (footnote added). Furthermore, in order "[t]o protect [a defendant's] right to conflict-free counsel, the trial court has an affirmative 'duty to inquire' into the effectiveness of counsel whenever 'the possibility of a conflict' becomes apparent before or during trial." Douglas v. United States,488 A.2d 121, 136 (D.C.App. 1985) (emphasis in original). Accord, e.g., United States v. Winkle, 722 F.2d 605, 611 (10th Cir. 1983); People v. Wandell, 555 N.Y.S.2d at 687, 554 N.E.2d at 1275. Once a trial court "knows or reasonably should know" that the possibility of a conflict of interest exists, "the court should itself initiate such an inquiry, even if defendant and his counsel do not make an objection raising the conflict question." United States v. Winkle, 722 F.2d at 611. An inquiry by the trial court "is vital 'because defendants may not always sense when a conflict exists or perceive how it might undermine effective representation.' " People v. Wandell, 555 N.Y.S.2d at 687, 554 N.E.2d at 1275. After conducting its inquiry, the trial court must determine whether an actual conflict exists and then must take any remedial action necessary. See Singleyv. United States, 548 A.2d 780, 785 (D.C.App. 1988); Douglas v.United States, 488 A.2d at 136. Even where an actual conflict is found to exist, however, "a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests." Holloway v. Arkansas, 435 U.S. at 483 n. 5,98 S.Ct. at 1178 n. 5.
 "In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understood the nature *Page 671 
of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel."
United States v. Martinez, 630 F.2d 361, 364 (5th Cir. 1980) (quoting United States v. Alvarez, 580 F.2d 1251, 1260 (5th Cir. 1978)), quoted in United States v. Winkle, 722 F.2d at 611. See also Douglas v. United States, 488 A.2d at 137-39.
In the present case, although trial counsel Parsons accepted representation of prosecution witness Wiley while he was representing the appellant, he did file a pre-trial motion to withdraw from the appellant's case, stating that he believed that a conflict of interest existed. This motion was granted, apparently without further inquiry, by the original trial judge. However, only two weeks later, trial counsel withdrew his motion to withdraw. There is no discussion in the record concerning the withdrawal of this motion; nor is there anything in the record to indicate that the trial court undertook any inquiry into the matter or that the appellant knowingly and intelligently waived his right to conflict-free counsel. In light of the cases discussed above, the facts that trial counsel stated that a conflict of interest existed, that trial counsel was permitted to withdraw, and that trial counsel was then permitted to resume representation of the appellantapparently without any discussion of the matter cause this Court grave concern. We note that the discrepancy in the address for the appellant on the certificate of service for the motion to withdraw and on the "Court Ordered Probation Services" form lends minimal support to the appellant's claim that he was unaware of the conflict at the time of his trial.
We therefore remand this cause to the trial court with the following directions: The trial court is to ascertain whether the proceedings on August 7, 1992 (where trial counsel withdrew his motion to withdraw and the appellant applied for youthful offender treatment), were conducted before a court reporter. If so, the trial court is directed to order that a transcript of those proceedings be prepared. The trial court is directed to review that transcript, if available, and the youthful offender file on Wiley and to conduct an evidentiary hearing, if one is necessary, to determine whether an actual conflict of interest existed, and, if so, whether the appellant was aware of that conflict and intelligently and voluntarily waived his right to conflict-free counsel. In the event the trial court determines that an actual conflict existed and that the appellant did not intelligently and voluntarily waive his right to conflict-free counsel, the trial court is directed to determine whether that conflict adversely affected trial counsel's performance. SeeUnited States v. Winkle, 722 F.2d at 610-11 (where record indicated that defense counsel "faced a serious question on the attorney-client privilege" in cross-examining key prosecution witness who had been a former client, but trial court did not "make an inquiry and a determination [as to] whether the apparent conflict was a real one adversely affecting defense counsel's performance [or] whether there was a valid waiver of such a conflict," appellate court remanded cause "so that an inquiry and determination on the question c[ould] be made by the trial court"). The trial court is directed to enter written findings of fact with regard to these matters. The trial court's written findings; the transcript of the August 7, 1992, proceedings, if available; the Wiley file; and the transcript of the evidentiary hearing conducted by the trial court, if any, shall be filed with this Court within 90 days of the date of this opinion. The Wiley file and any portion of the court's written findings regarding that file may be filed with this Court under seal. See Ala. Code 1975, § 15-19-7(b).
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] I have previously stated my view that a defendant is not absolutely required to request an instruction on a lesser included offense before the court's oral charge in order to preserve for appeal the issue of the court's refusal to give that charge. See Kirkpatrick v. State, 574 So.2d 1025, 1030
(Ala.Cr.App. 1990) (Bowen, J., concurring in result). While it is clearly the better practice for a defendant to request such instructions before the oral charge, see Rule 21.1, A.R.Crim.P., I continue to adhere to my view that a request for an instruction on a lesser included offense made "before the jury retires to consider its verdict," which may be after the court's oral charge, is sufficient to preserve any alleged error in the refusal to give that charge, provided that an adequate objection to the refusal to give the charge is also timely made. In the present case, the request for the charge on the lesser included offense was clearly made before the oral charge. Thus, this particular aspect of Sartin is not here in question.
[2] The question of whether the theft or "switching" of illegal drugs constitutes the "provocation recognized by law" that is necessary to reduce an offense from intentional murder to heat of passion manslaughter, see § 13A-6-3(a)(2), is not before this Court and is specifically not addressed in this opinion.
[3] The judge who appointed Mr. Parsons to represent Wiley was not the same trial judge as the original judge in the appellant's case, nor was he the same judge who presided over the appellant's trial.
[4] While trial counsel's cross-examination of Wiley appears to have been vigorous, we note that that, in and of itself, is not determinative of whether cross-examination was in fact impaired. See Church v. Sullivan, 942 F.2d 1501, 1512 (10th Cir. 1991).
[5] Aside from testimony by the victim's common-law wife that the appellant told her the day after the shooting that he had shot the victim, Wiley's testimony was the only evidence linking the appellant to this offense.
[6] Within this context, the United States Supreme Court further stated: "[A]ttorneys are officers of the court and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' " Hollowayv. Arkansas, 435 U.S. at 486, 98 S.Ct. at 1179. *Page 672