[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 928 
Toriano A. Sims was convicted of possession of a controlled substance, crack cocaine, a violation of § 13A-12-212, Ala. Code 1975; resisting arrest, a violation of § 13A-10-41, Ala. Code 1975; and carrying a concealed pistol without a license, a violation of § 13A-11-73, Ala. Code 1975. Sims was sentenced to 6 years' imprisonment, 6 months' imprisonment, and 1 year's imprisonment, respectively. The sentences were to run concurrently.
Phenix City Police Officer Shane Banks testified that he was on routine patrol around midnight on December 5, 1996. While he was patrolling city property posted "authorized personnel only," he noted an automobile parked near a water tower. Three people were sitting in the front seat of the car. When he approached them, he smelled what he believed to be marijuana. In response to his question, all three admitted that they had been smoking marijuana. (R. 37.) Banks asked the three for identification. The two passengers handed over identification. The driver, however, responded that he did not have any identification and stated that his name was "Rashaun King." (R. 37.) When back-up arrived, all three were patted down. In the process of the pat-down search of the driver, the police found his wallet, which identified him as Toriano A. Sims. The officers ran a name check and discovered that Sims had an outstanding "failure to appear" warrant. They arrested Sims at that time. The police then conducted an inventory search of Sims's vehicle before it was towed. Officer Banks found 6 rocks of crack cocaine in the pocket of a shirt in the backseat, a film canister containing 74 rocks of crack cocaine under the driver's seat, a small plastic bag containing 5 pieces of crack cocaine, a .22 caliber pistol under the driver's seat, and a .25 caliber handgun under a jacket on the front seat. (R. 43-45.)
Officer Banks testified that Sims admitted that he owned the car. (R. 66.) Banks also testified that when he asked Sims to produce a pistol permit, Sims could not produce one. (R. 56-57.) Forensic scientist Sherwin Boswell testified that the items believed to be crack were tested and that they were, in fact, crack cocaine. (R. 85-94.)
Sims argues that the trial court erred when it denied his motion for a judgment of acquittal because, he contends, the prosecution failed to establish a prima facie case of possession of a controlled substance, resisting arrest, or carrying a pistol without a license.
Upon review of a denial of a motion for a judgment of acquittal, this Court must determine whether any evidence presented to the trial court before the motion was made tended to point to the accused's guilt. Sartin v. State, 601 So.2d 1142
(Ala.Crim.App. 1992), overruled on other grounds, Molton v. State, 651 So.2d 663 (Ala.Crim.App. 1994). Furthermore, upon review, we must accept as true the evidence presented by the State, view it in a light most favorable to the State, and accord the State all legitimate inferences therefrom. Id.
 I.
To establish a prima facie case of possession of a controlled substance, the State must prove that Sims possessed one of the controlled substances enumerated in Schedules I through V. §§ 20-2-20 *Page 929 
through 20-2-31, Ala. Code 1975; See § 13A-12-212, Ala. Code 1975.
"In establishing a prima facie case of possession of a controlled substance, the state must prove that the defendant had actual or constructive possession of the contraband. To establish constructive possession, the state must prove beyond a reasonable doubt that the accused had knowledge of the presence of the illegal substance. . . ."
"The defendant's knowledge of the presence of the substance may be shown by circumstantial evidence. . . . Furthermore, a defendant's mere presence in an automobile in which an illegal substance is found will not support his conviction for possession of that substance unless the state introduces other evidence in support of the defendant's possession. . . ."
 "`Generally, possession of a narcotic drug or restricted dangerous drug is sufficient to permit the inference of knowledge of the nature of the substance possessed, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises.'"
Perry v. State, 534 So.2d 1126, 1128 (Ala.Crim.App. 1988) (citations omitted). Circumstances that connect the defendant and the contraband include:
 "(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence."
Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App. 1978). In addition, a reasonable inference that the defendant had knowledge and possession of contraband can be drawn when the defendant is discovered driving the car and the contraband is found under the driver's seat, in conjunction with the surrounding circumstances testified to by the arresting officer. Spears v. State,500 So.2d 96 (Ala.Crim.App. 1986).
The State's evidence tended to show that Sims admitted that he owned the car he was driving. Over 80 rocks of crack cocaine were discovered in the car. Most of the rocks were found under the driver's seat where Sims had been sitting. Sims lied about not having identification and he gave the investigating officer a false name. The officer smelled burned marijuana and, Sims admitted that he had been smoking marijuana. Forensic scientist Sherwin Boswell testified that the items believed to be crack were tested and that they were, in fact, crack cocaine. (R. 91.)
It is our opinion that the State presented sufficient evidence from which a jury might reasonably conclude that Sims was guilty of possession of a controlled substance. The trial court did not err in its denying Sims's motion for a judgment of acquittal on this count. Crear v. State, 591 So.2d 530
(Ala.Crim.App. 1991).
 II.
To establish a prima facie case of resisting arrest, see § 13A-10-41, Ala. Code 1975, the State must prove that the accused intentionally prevented or attempted to prevent a peace officer from effecting a lawful arrest of himself or of another person.
The State's evidence tended to show that Sims lied about having identification and intentionally gave the officers a false name. The State argues that Sims lied to prevent the officers from discovering his *Page 930 
identity, because Sims had an outstanding warrant, and once the police discovered his identity, a name check would reveal the outstanding failure to appear warrant. The warrant resulted in Sims's arrest.
The typical resisting arrest scenario involves physical action; however, "it is not necessary that defendant used force or violence in obstructing the officer, only that he engaged in some conduct intending to prevent the officer from effecting a lawful arrest." Commentary to § 13A-10-41, Ala. Code 1975. See also Scott v. State, 624 So.2d 230 (Ala.Crim.App. 1993). Clearly, the use of force is not an element of resisting arrest; nevertheless, in Alabama the criminal offense of resisting arrest has not been extended to include mere words. These facts present a case of first impression — whether lying to an arresting officer about having proper identification and further supplying that officer with a false name constitutes resisting arrest.
Does the language "prevent," or "some conduct intending to prevent" include lying to a police officer and/or providing a false name? Under the established rules of statutory construction, the words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and the court is bound to interpret the plain language to mean exactly what it says. State Department of Transportation v. McLelland, 639 So.2d 1370 (Ala. 1994). Because the plain and ordinary meaning of the statute's language does not limit resisting arrest to physical activity, we hold that Sims's lying to police could constitute resisting arrest because he initially prevented the police from discovering his identity and thus prevented his arrest on the outstanding warrant.
Sims probably did lie to the police officers intending to prevent them from discovering the outstanding warrant and arresting him. However, Sims's knowledge of the outstanding warrant was an integral part of the intent element and the State did not present any evidence from which that knowledge could be inferred. The trial court recognized this problem and inquired about the State's proof of Sims's intent to resist arrest: "Well, in this particular situation, if it's the giving of a false name that is the means by which a person is attempting to resist, would you not have to have the requirement of the element that the person has to know that there is such a particular writ for his arrest or her arrest?" (R. 107-08.) The prosecutor responded, "Judge, we intend to argue to the jury that the resisting arrest was based on the Defendant's attempt to prevent himself for being arrested for a writ which he knew to be outstanding." (R. 111.)
Upon a review of the record, we cannot find any evidence tending to prove that Sims knew of the outstanding warrant. Therefore, we have no evidence of Sims's intent to resist arrest. Based on the foregoing, the evidence presented by the State was not sufficient evidence from which a jury might reasonably conclude that Sims was guilty of resisting arrest.[1] See Duncan v. State, 686 So.2d 1279 (Ala.Crim.App. 1996); Wimberly v. State,30 Ala. App. 394, 6 So.2d 524 (Ala.Ct.App. 1942). Therefore, we reverse the trial court's judgment of conviction for resisting arrest and remand this cause to the trial court with instructions that it vacate Sims's conviction and sentence in case number CC-97-402.
 III.
To establish a prima facie case of carrying a concealed weapon without a license, see § 13A-11-73, Ala. Code 1975, *Page 931 
the State must prove (1) that the accused carried a pistol, (2) in a vehicle, and (3) that the accused had no license to carry the pistol. E.M. v. State, 675 So.2d 90 (Ala.Crim.App. 1995). The prosecution may prove that the accused had not been issued a license to carry the gun by offering evidence that the accused was unable to produce a license when requested to do so. Id. at 91.
The State's evidence tended to show that Sims admitted that he owned the car he was driving. He had two guns in his vehicle. One of the guns was directly under his seat. When asked, he could not produce a license for either. (R. 56-57.)
It is our opinion that the State presented sufficient evidence from which a jury might reasonably conclude that Sims was guilty of carrying a concealed weapon without a license; therefore, the trial court did not err in denying Sims's motion for a judgment of acquittal.
For the above-stated reasons, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded with instructions. The trial court should file with this court its order vacating Sims's conviction for resisting arrest and the six-month sentence based on that conviction, and make due return to this court within 28 days of the date of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
McMillan, Brown, and Baschab, JJ., concur. Long, P.J., concurs in result only with opinion.
[1] The evidence presented by the State would have established the offense of § 13A-9-18.1, Ala. Code 1975, "giving of false name or address to a law enforcement officer." A person commits the crime of giving a false name or address to a law enforcement officer if the person gives a false name or address to a law enforcement officer in the course of the officer's official duties with intent to mislead the officer.