Roger William Morgan was convicted for the criminally negligent homicide of his wife, Kathy Morgan. Sentence was imprisonment for one year in the county jail and a fine of $2000. Six issues are raised on this appeal from that conviction.
 I
Mrs. Morgan was shot on January 28, 1986, at "Brushes and Boards," an arts and crafts business which she operated in Muscle Shoals, Alabama. The next day law enforcement officers returned to the business with forensic experts and searched the premises without a search warrant. The trial judge found that this warrantless search did not violate the defendant's constitutional rights because the defendant had no standing to object and because he consented to the search.
In denying the motion to suppress, the trial judge made the following findings in a written order:
 "(1) The Court finds that the deceased, Kathy Morgan, was killed by a gunshot wound to the head on or about January 28, 1986 in her place of business known as Brushes and Boards in the City of Muscle Shoals, Alabama.
 "(2) The Court further finds from the evidence that the business known as Brushes and Boards was open to the public and run by Kathy Morgan and other female employees, and her Husband, Roger Morgan, did not take part in the day to day handling of the business.
 "(3) The Court further finds from the evidence that on January 28, 1986, at the time of her death, the Muscle Shoals Police were called and upon arriving at the business Roger Morgan was talking on the telephone and motioned a policeman inside at which time he informed him that he was shot in the leg and his wife was in the back office dead.
 "(4) The Court further finds from the evidence that on January 28, 1986 other investigators arrived at the business known as Brushes and Boards and proceeded to investigate Kathy Morgan's death during which Robert Hall, the Investigator *Page 188 
with the Muscle Shoals Police Department, obtained the keys to the business and went to a local hospital to interview Roger Morgan at which time the Investigator informed Mr. Morgan that he had the keys to the business and would lock it up and may have to go back inside later.
 "(5) The Court further finds from the evidence that Robert Hall telephoned the Forensic Science officials in Huntsville, Alabama, on January 28, 1986 to come to Muscle Shoals to make an investigation at which time he was informed they could not come until the next day at which time they came to Muscle Shoals and entered the business to complete their investigation.
 "(6) The Court further finds from the evidence that Roger Morgan never revoked his consent to make an investigation in the business known as Brushes and Boards in the City of Muscle Shoals, Alabama.
 "(7) The Court further finds that consent remained to complete the investigation by the law enforcement investigators which was never revoked.
 "(8) The Court further finds that the Defendant, Roger Morgan, has no standing to deny the law enforcement investigators to complete their investigation."
After listening to conflicting testimony, the trial judge concluded that the defendant consented to the search. That finding is supported by substantial evidence and, therefore, must be upheld:
 " '(W)hen conflicting evidence is presented on the issue of the voluntariness of a consent to search and the trial judge finds that the consent was voluntarily given, great weight must be given his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Sullivan v. State, 340 So.2d 878, 880-881
(Ala.Cr.App.), cert. denied, 340 So.2d 881 (Ala. 1976).' " Weatherford v. State, 369 So.2d 863, 871
(Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala. 1979).
For purposes of this issue, we assume but do not decide that the defendant had standing to object to the search.
"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte,412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854
(1973). Although no law enforcement officer ever specifically asked the defendant if they could "search" the business, the totality of the circumstances indicates that he did consent to such a search.
After the shooting, the defendant, who had been shot in his leg, was taken to a local hospital. There, Detective Hall told him that he had "Kathy's keys and that we may need to go back in the business." Hall testified that the defendant "gave some type of acknowledgement, either okay or that's all right or I understand, or something along those lines."
The defendant was a public security officer, a lieutenant, for T.V.A. He testified that he was familiar with the "Miranda Warning Card" and that he had read it "numerous times" to other people. He voluntarily gave two statements to the police and freely participated in a videotaped reenactment of the homicide. At trial, he testified that he had nothing to hide and that he fully cooperated with the police in their investigation. Immediately after the shooting, the defendant "ran next door to the auto parts place" and told a person "to call the police and an ambulance."
Here, there was never any indication that the defendant retracted or revoked his initial consent to the officer to enter the premises. Compare Cooper v. State, 480 So.2d 8, 11
(Ala.Cr.App. 1985), where the accused locked his plane after the initial *Page 189 
search. This case is very similar to Hubbard v. State,382 So.2d 577 (Ala.Cr.App. 1979), affirmed, 382 So.2d 597 (Ala. 1980), set aside, 405 So.2d 695 (Ala. 1981), on remand,405 So.2d 695 (Ala.Cr.App. 1981), wherein this Court held that "consent to search may be given on actions alone" and found it "reasonable to conclude that when the defendant handed the keys to the police officer he voluntarily relinquished all expectation of privacy." Hubbard, 382 So.2d at 592.
The denial of the motion to suppress was proper.
 II
The trial judge properly sustained the prosecutor's objections and refused to permit the defendant to show that his wife had made "threats" against him several days before the homicide. Defense counsel represented that Mrs. Morgan had told the defendant that "if he tried to interfere with the business or made the business an issue in the divorce settlement, she would try to get his job by reporting him for stealing gas." The second threat was Mrs. Morgan's alleged statement that "if the settlement of the divorce — property settlement satisfactory to her was not made, she would burn the house."
These threats were properly suppressed because of their nature.
 "[I]n order to be admissible as evidence in a prosecution for homicide a threat by the deceased should indicate an intention to take the life of the person threatened, or to do him great bodily harm. . . . Nor is a threat by the deceased to attack the habitation of the accused a threat against his person which can be taken into consideration in a prosecution for homicide, on an issue of self-defense." F. Wharton, The Law of Homicide § 253, p. 417 (3rd ed. 1907).
"The threats must have been of a nature to show the intention or desire of deceased to take accused's life, or at least to do him serious bodily harm." 40 C.J.S. Homicide § 276(b) (1944).
 III
A videotape film of a reenactment of the homicide was properly admitted into evidence at trial over the defendant's objection that the "room was not the same size, did not have the same furnishings, and did not have the same physical environment" as the scene of the shooting.
Three days after the shooting the defendant agreed to participate in a videotaped representation of his account of the shooting. The reenactment occurred in an office of a state trooper's post. A witness testified that the videotape "reasonably and accurately portrayed what [the defendant] said happened on that occasion and his actions as shown in that tape."
 "A motion picture is admissible if it is relevant and if it is properly authenticated and identified. The predicate for its admission is laid by having a witness who testifies that the picture, if exhibited on the screen, will accurately reproduce the objects or actions which he observed. . . .
 "The sufficiency of the preliminary proof offered to show that the picture is an accurate reproduction of the things which it purports to portray, and whether the picture will aid or tend to confuse the jury, is committed to the sound discretion of the trial court which will not be reversed except for gross abuse." C. Gamble, McElroy's Alabama Evidence § 123.06 (3rd ed. 1977).
"All the cases support the proposition that videotape films, if relating to otherwise competent evidence, are admissible, providing a proper foundation is laid for their admission." Annot., 60 A.L.R.3d 333, 336 and § 3 (1974). In particular, films of a reenactment of a homicide have been held admissible. See cases collected at Annot., 41 A.L.R.4th 812, § 18(a) (1985).
 "For some purposes, a photograph [or videotape] need not have been taken at the time of the relevant event, and even when certain features of the scene have changed at the time the photograph [or videotape] was taken, the trial court may still admit it so long as supporting testimony shows it to be an accurate portrayal *Page 190 
of the perceptions to which the witness testifies and the differences are sufficiently explained to the jury." W. Schroeder, J. Hoffman, R. Thigpen, Alabama Evidence, § 11-3, p. 376 (1987).
We find no abuse of the discretion of the trial judge in the admission of the videotape.
 "[T]he rule of this state is to the effect that the determination of the sufficiency of preliminary proofs offered to identify pictures and to show that such pictures accurately represent what they purport is a matter within the sound discretion of the trial court and his decision on sufficiency of the predicate so laid will not be reviewed by an appellate court except for abuse. It is a matter for the trial court in the exercise of his sound discretion to determine whether a photograph offered in evidence will aid the jury or tend to confuse or prejudice the jury." Godwin v. Jerkins, 282 Ala. 11, 12, 208 So.2d 210 (1968).
See also Walker v. Mayer, 290 Ala. 233, 235-36, 275 So.2d 662
(1973).
 IV
The defendant argues that the State "failed and refused to provide him with certain exculpatory evidence as is required by the Alabama Rules of Criminal Procedure." Appellant's brief, p. 24. However, the defendant never identifies the specific exculpatory evidence he was denied.
Apparently, this claim concerns statements the police took from Anthony Keenum and Willie Owens. In his statement to the police the defendant stated that he had told Keenum and Owens that his "gun was missing and [he] felt [his wife] had it."
We find no error. "Brady [v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] presupposes the actual existence of evidence favorable to the accused and material either to guilt or punishment. Bailey v. State, 421 So.2d 1364, 1369
(Ala.Cr.App. 1982). There must be some showing that such exculpatory and influential evidence actually exists before a constitutional violation of the Brady rule may be found.Bailey, 421 So.2d at 1368-69." Timmons v. State, 487 So.2d 975,982 (Ala.Cr.App. 1986). "To establish a Brady violation, [the defendant] must demonstrate (1) that the prosecution suppressed evidence; (2) that that evidence was favorable to him or exculpatory; and (3) that the evidence was material." Exparte Kennedy, 472 So.2d 1106, 1110 (Ala.), cert. denied,Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325
(1985).
Rule 18.1(e), Temporary Alabama Rules of Criminal Procedure, provides, in effect, that, in most cases, statements from witnesses taken by the police are not discoverable.
Here, defense counsel was not seeking the notes Officer Hall used while testifying at trial in order to cross-examine or impeach Hall. Therefore, Ex parte Pate, 415 So.2d 1140 (Ala. 1981), is not applicable.
 V
The defendant's written requested charges on the legal principles of accident were properly refused because those principles were fairly and substantially covered in the oral instructions of the trial court, Ex parte Wright,494 So.2d 745, 748 (Ala. 1986), cert. denied, Wright v. Alabama, ___ U.S. ___, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987). The requested charges were also properly refused because they failed to define "accident." Wakefield v. State, 447 So.2d 1325, 1327
(Ala.Cr.App. 1983). Additionally, although defense counsel stated the matter to which he objected, he failed to state the grounds of his objection. Matkins v. State, 497 So.2d 201, 203
(Ala. 1986).
 VI
The defendant argues that his conviction is based on surmise and conjecture because there was no eyewitness to the shooting and because no witness could say that his version of the incident was not possible.
Even where the accused is the only living eyewitness to the homicide, circumstantial evidence alone may be sufficient to prove the accused's commission of or participation in the killing. Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980). *Page 191 
 "In reviewing the sufficiency of the evidence in criminal cases, we are to view the evidence and all inferences that may reasonably be drawn from it in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Whether evidence is direct or circumstantial, we must accept all credibility choices that tend to support the jury's verdict. United States v. Allison, 616 F.2d 779
(5th Cir.) cert. denied, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). The standard of review is whether a reasonably minded jury must necessarily have entertained a reasonable doubt of the defendant's guilt. If the jury could not reasonably have concluded that the evidence excluded every reasonable hypothesis but that of guilt, then we must reverse the convictions. United States v. Rodriguez, 654 F.2d 315 (5th Cir. 1981); United States v. Kelley, 630 F.2d 302 (5th Cir. 1980)." United States v. Hinds, 662 F.2d 362, 366
(5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982).
Guided by these principles we find that the evidence supporting the defendant's conviction is not only sufficient, but substantial as well. The defendant had a motive to kill his wife. The wife wanted a divorce and had rented her own apartment. The defendant had withdrawn one-half of the money in his wife's business account. The defendant had the means and the opportunity to kill his wife. Undisputedly, only the defendant and his wife were present when the wife was shot with the defendant's own pistol. "The law is settled in Alabama that where the appellant admits killing the victim, . . . the question of whether the act was justified as having been committed in self-defense is one for the jury to decide."Davis v. State, 450 So.2d 473, 474 (Ala.Cr.App. 1984). "In a prosecution for murder it is for the jury to determine the claim of the accused that the shooting was accidental." Maddoxv. State, 370 So.2d 1111, 1114 (Ala.Cr.App.), cert. denied, Exparte Maddox, 370 So.2d 1115 (Ala. 1979). See also Lockett v.State, 505 So.2d 1281, 1284-86 (Ala.Cr.App. 1986).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.