The appellant, George Brown, Jr., was convicted on two counts of capital murder, in violation of § 13A-5-40(a)(4), Code of Alabama 1975, and on one count of attempted murder, in violation of § 13A-4-2, Code of Alabama 1975. He received two sentences of imprisonment for life without the possibility of parole on the capital murder convictions and a sentence of imprisonment for life on the attempted murder conviction.
The evidence presented at trial tended to show that on July 15, 1990, the appellant shot and killed Minnie Lee Crenshaw and Charles Crenshaw and that he shot Veronica Brown, who was the Crenshaws' daughter and the appellant's estranged wife. The appellant *Page 418 
shot Mrs. Crenshaw with a pistol while she was standing at the front door of her house in Birmingham, Alabama. The appellant then went inside the house, where he shot Mr. Crenshaw and Mrs. Brown. Mr. and Mrs. Crenshaw died as a result of the gunshot wounds. As a result of the shooting, Mrs. Brown underwent surgery and was hospitalized for one month.
 I
The appellant argues that his right not to be placed in double jeopardy has been violated. He contends that he was charged with and convicted of the same crime twice. The appellant was convicted twice for the capital offense defined in § 13A-5-40(a)(4): "[m]urder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant." The appellant, however, committed two different crimes that violated the same statute. He killed Minnie Lee Crenshaw during the course of a burglary and he killed Charles Crenshaw during the course of the same burglary.
The appellant appears to contend that charging him with two counts of capital murder for two murders during a single burglary was splitting a single continuous crime into two parts. He argues, in effect, that after committing a murder in the course of a burglary, he gets a "free shot"; that he could commit additional murders during that same burglary without those murders being capital crimes. This is not the law. While the offense of burglary may be a continuous offense incapable of being split into separate offenses, the offense of murder during the course of a burglary is one offense and may be committed more than once during a single burglary.
In Coleman v. Jones, 909 F.2d 447, 448 (11th Cir. 1990), the court, interpreting Alabama's robbery-murder statute, stated:
 "To sustain a conviction, both the intentional killing and the robbery must be proven, and such proof constitutes one offense."
(Citations omitted.) Likewise, burglary-murder is a single offense, which requires that both an intentional killing and a burglary be proved. Here, the state proved that the appellant intentionally killed Mrs. Crenshaw during the course of a burglary and that he intentionally killed Mr. Crenshaw during the course of a burglary. It makes no difference that there was only one underlying burglary for each offense of burglary-murder. Each crime was composed of a burglary and a murder. The appellant's right not to be placed in double jeopardy was not violated: he committed two separate crimes, was charged with two separate crimes, and was convicted of two separate crimes.
 II
The appellant contends that the prosecution violatedBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), when it struck six black prospective jurors from the venire. Batson prohibits the removal of blacks from a black defendant's jury for racial reasons. The Batson holding was extended to white defendants in Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and to civil litigants in Edmondson v. Leesville Concrete Co., ___ U.S. ___,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The Batson holding has also been extended to defense counsel in criminal trials. Georgia v.McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).
The venire was composed of 42 members, 14 of whom were black. The state struck 6 blacks, and the defense struck 5. Three blacks served on the 14-member jury that was impaneled.[1] The circuit court, unsure whether there was a prima facie case of purposeful discrimination, required the state to provide race-neutral reasons for its strikes. "[W]here a trial court has made no express finding that a prima facie case of discrimination has been established but nonetheless requires a prosecutor to explain its peremptory challenges, this court will consider *Page 419 
such a finding to be implied and will proceed directly to evaluate the prosecution's explanations." Sims v. State,587 So.2d 1271, 1276 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 1179, 117 L.Ed.2d 423 (1992).
The state gave the following reasons for its strikes of black veniremembers:
 Juror number 247: She stated that her grandmother had just died and that she needed to be with her mother. She had attended school with defense counsel. Her aunt had been killed, and she did not know if anyone had ever been prosecuted for it.
 Juror number 190: She had two young children that she needed to care for. She attended the same church as defense counsel, who was a deacon. Her cousin had been killed and no one had been prosecuted for it.
 Juror number 153: He knew the defendant's father and brother. He had also known the victims 30 years earlier.
 Juror number 77: He had been on a criminal jury in 1988. He said that the jury returned a verdict of guilty, but actually the verdict was not guilty.
 Juror number 55: This juror was slow to respond to questions and appeared inattentive and confused. She was also single and very young.
 Juror number 195: He was single and he arrived 19 minutes late to the courtroom.
Both juror number 247 and juror number 190 had family obligations that would tend to distract them from their roles as jurors. Additionally, they both knew defense counsel and both had relatives who had been killed. These reasons are not based on race and the strikes based on these reasons do not violate Batson. McGahee v. State, 554 So.2d 454 (Ala.Cr.App.), aff'd, 554 So.2d 473 (Ala. 1989).
Striking a juror because he knows the defendant or his family has been held to be for a race-neutral reason. Strother v.State, 587 So.2d 1243 (Ala.Cr.App. 1991). Thus, the striking of juror number 153 did not violate Batson.
A juror's prior service on a jury where the defendant was acquitted has also been held to be a race-neutral reason to strike. Heard v. State, 584 So.2d 556 (Ala.Cr.App. 1991); McLeodv. State, 581 So.2d 1144 (Ala.Cr.App. 1990). Therefore, the striking of juror number 77 was for a race-neutral reason.
A valid race-neutral reason for striking a juror is because he is inattentive, hostile, or impatient, or is evasive and ambiguous when answering questions. Mitchell v. State,579 So.2d 45 (Ala.Cr.App. 1991), cert. denied, 596 So.2d 954
(Ala. 1992). Therefore, the state provided a race-neutral reason for striking juror number 55 based on that juror's demeanor. See Stephens v. State, 580 So.2d 11 (Ala.Cr.App.), affirmed,580 So.2d 26 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 176,116 L.Ed.2d 138, rehearing denied, ___ U.S. ___, 112 S.Ct. 625,116 L.Ed.2d 647 (1990) (holding that strike based on juror's demeanor was valid race-neutral reason and did not violateBatson). In addition, the state struck two white jurors (jurors number 123 and 143) for this same reason.
Being late to court is certainly a strong and valid race-neutral reason for striking a juror. Robinson v. State,560 So.2d 1130 (Ala.Cr.App. 1989). Therefore, the striking of juror number 195 did not violate Batson.
The state provided race-neutral reasons for all six strikes of black veniremembers. No Batson violation occurred here.
 III
Next, the appellant argues that the circuit court erred in denying his motion for a judgment of acquittal, which he made at the end of the state's case. Specifically, he contends that the state did not present any "direct evidence at trial which could have established the element of intent to murder for any of the three victims in the case." Intent to kill, however, may be inferred from the use of a deadly weapon. Benton v. State,536 So.2d 162 (Ala.Cr.App. 1988).
Section 13A-5-40(a)(4), Code of Alabama 1975, provides that "[m]urder . . . during a burglary in the first or second degree or an attempt thereof. . . ." is a capital offense. Section13A-7-5(a) provides: *Page 420 
 "A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument."
The evidence presented at trial tended to show that the appellant shot and killed Charles Crenshaw and Minnie Crenshaw at their residence with a pistol. Each died as a result of two gunshot wounds. The appellant also shot Veronica Brown, who suffered permanent injuries.
Four eyewitnesses, one of whom was Birmingham police officer Joe Duchock, who had been called to the scene, testified that they saw the appellant on the front porch of the Crenshaws' house while Mrs. Minnie Crenshaw was standing at the front door. They also saw the appellant shoot Mrs. Crenshaw and then enter the house. Officer Duchock testified that he then heard more shots fired inside the house.
Veronica Brown, testified that the appellant entered the house and shot her twice in the left hip and once in the vagina. Another bullet grazed her right leg.
Based on the evidence presented by the state, the court did not err in denying the appellant's motion for a judgment of acquittal. The state presented sufficient evidence for the jury to find that the appellant had the necessary intent to be found guilty of murdering Charles Crenshaw and Minnie Crenshaw during a burglary and of attempting to murder Veronica Brown.
 IV
Last, the appellant argues that the circuit court erred in refusing to give jury charges on certain lesser included offenses. The court charged the jury on capital murder and on the lesser included offense of felony murder in relation to the killings of Charles Crenshaw and Minnie Crenshaw. The court also charged the jury on attempted murder and on the lesser included offense of assault in the first degree in relation to the shooting of Veronica Brown.
Rule 21.2, A.R.Crim.P., provides that:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
(Emphasis added.)
Here, after the jury was charged, the appellant's counsel made the following objection:
 "I would respectfully except to the Court's failure to not [sic] give the other charges, which I think are specifically related to this case, and I would just make that general exception."
This objection does not meet the requirements of Rule 21.2. The objection does not specifically state which charges the appellant wanted the court to give. The appellant failed to preserve the issue of the court's failure to give charges on other lesser included offenses because he did not state his objection with particularity. Hendrix v. State, 589 So.2d 769
(Ala.Cr.App. 1991).
Even if the appellant had preserved this issue for appellate review, we would be compelled to hold that the circuit court committed no reversible error by failing to charge the jury on other lesser included offenses. It was not necessary here to charge on every conceivable lesser included offense, down to discharging a firearm. The jury was given the choice of finding the appellant guilty of capital murder, guilty of felony murder, or not guilty of any crime. The jury convicted him of capital murder. "Therefore, we must logically conclude that an instruction on . . . [a lesser included offense], although *Page 421 
proper, would not have affected the outcome of this case."Ex parte Jordan, 486 So.2d 485, 489 (Ala.Cr.App. 1986). Thus the refusal to instruct on any other lesser included offenses was, at the worst, merely harmless error. Rule 45, A.R.App.P. See also Phelps v. State, 435 So.2d 158 (Ala.Cr.App. 1983).
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Of these 14 members, two were alternates. One of the jurors was excused from jury service and was replaced by one of the alternates. The remaining alternate was excused when the jury retired for deliberations. The record does not indicate the race of the alternates or of the jury member who was excused.