[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1268 
The appellant, Nicholas Ramon Wilkerson, was convicted of murder made capital because it was committed during a robbery in the first degree, § 13A-5-40(a)(2), Code of Alabama 1975. Both parties, with the consent of the trial court, waived the right to a sentencing hearing before a jury, and the trial court sentenced the appellant to life imprisonment without parole, pursuant to § 13A-5-44(c), Code of Alabama 1975.
 I.
The appellant contends that the trial court improperly limited the scope of his voir dire questioning of veniremembers C.S. and M.T.
The appellant argues that the trial court erred in not allowing him to conduct individual voir dire examination of C.S. concerning C.S.'s views on certain factors that might constitute mitigating evidence in evaluating the appropriateness of the death penalty. However, because the appellant was sentenced to life imprisonment without parole, any error in this regard is harmless. Giles v. State,632 So.2d 568, 575 (Ala.Cr.App. 1992), *Page 1269 
aff'd, 632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213,114 S.Ct. 2694, 129 L.Ed.2d 825 (1994).
The appellant argues that the trial court erred in not allowing him to conduct further individual voir dire examination of M.T. concerning M.T.'s possible fixed opinion of the appellant's guilt. The record reflects that the appellant's counsel had already engaged in individual voir dire of M.T. when he requested that he be allowed to question M.T. further. The trial judge then stated, "All right." However, theprosecutor stated, "I will deny further inquiry." R. 300. Instead of seeking a final ruling from the trial judge, the appellant's counsel, apparently in response to the prosecutor's statement, made only a general objection and asked M.T. no further questions. The appellant's claim that he was disallowed from conducting further voir dire of M.T. is procedurally barred from appellate review, because the appellant failed to obtain an adverse ruling from the trial court on this issue.Hemphill v. State, 669 So.2d 1020, 1023 (Ala.Cr.App. 1995) (" 'In the absence of a ruling, a request for a ruling or objection to the court's failure to rule, there is nothing preserved for appellate review.' Porter v. State, 654 So.2d 63
(Ala.Cr.App. 1994)").
Even had the appellant preserved this issue for our review, we would find it to be without merit. The appellant's contention in his brief to this Court that "[t]he trial judge limited the individual voir dire of [M.T.] to her opinions regarding the death penalty" (appellant's reply"brief at 6) is unsupported by the record. The record reflects that in addition to questioning M.T. about her opinions on the imposition of the death penalty, the appellant's counsel specifically questioned M.T. regarding whether she had a fixed opinion as to the appellant's guilt as a result of her prior knowledge of the case. The extent of individual voir dire examination is within the discretion of the trial court, See Haney v. State,603 So.2d 368, 402 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993). Here, as in Johnson v. State, 620 So.2d 679, 707
(Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709
(Ala. 1993), "[t]he record reveals that no evidence of any prejudicial publicity was presented to the trial court," and "[t]here is no indication in the record that there was any pretrial publicity in the case that gave rise to a significant possibility of prejudice." See Parker v. State, 587 So.2d 1072
(Ala.Cr.App. 1991). Accordingly, the trial court did not abuse its discretion in not allowing the appellant to conductfurther individual voir dire examination of M.T.
 II.
The appellant contends that the trial court erred in not granting his challenges for cause as to veniremembers R.C., L.W., M.T., and B.A., and that the trial court erred by granting the State's challenge for cause as to veniremember C.S.
With regard to R.C., the appellant argues that this veniremember evidenced a fixed opinion as to his guilt because she indicated that she had read about the murder in the newspaper and she made the following statement with respect to what she read: "I just basically thought they had found somebody that did it is all I remember. I don't recall having any great thoughts about it." R. 49.
" ' "A 'fixed opinion' which will bias a verdict is one that is a conviction or prejudgment, a strong or deep impression which closes the mind of a juror and combats the testimony and resists its force." ' " Oryang v. State, 642 So.2d 979, 987
(Ala.Cr.App. 1993), quoting Siebert v. State, 562 So.2d 586,595 (Ala.Cr.App. 1989), in turn quoting other cases. We find that R.C. did not, as the appellant asserts, evidence a fixed opinion that the appellant "was guilty because he was arrested for the crime." Appellant's brief at 25. When the appellant challenged R.C. for cause based on her statement, the trial judge correctly concluded that this issue was "a question of semantics." R. 50. R.C. indicated that she had only limited information about the crime. "The mere knowledge of the facts and issues in this case, as in any case, does not disqualify a potential juror from serving on the case. Kinder v. State,515 So.2d 55, 59-61 (Ala.Cr.App. 1987)." *Page 1270 Harris v. State, 632 So.2d 503, 519 (Ala.Cr.App. 1992), aff'd, 632 So.2d 543 (Ala. 1993), aff'd, 513 U.S. 504,115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).
With regard to L.W., there is no indication in the record that the appellant ever made a challenge for cause as to this veniremember. As the State points out, while the appellant asserts in his brief that L.W. was juror no. 230, appellant's brief at 22, and the record does reflect that the trial judge denied a challenge as to juror no. 230, R. 84, the record does not reflect the juror number assigned to L.W. In fact, the record does not contain the jury list, and we are unable to discern from the transcript the numbers assigned to most veniremembers who were challenged for cause. Consequently, the appellant's claim as to L.W. is procedurally barred from appellate review. Minter v. State, 543 So.2d 202, 203
(Ala.Cr.App. 1989) ("[t]his court is bound by the record and we cannot consider arguments not supported by the record").
With regard to M.T., the appellant argues that this veniremember had a fixed opinion as to his guilt because of her relationship with a sheriff's deputy and because she had visited the murder scene on the night of the crime. During individual questioning by the trial judge, M.T. stated that her boyfriend was a Jefferson County sheriff's deputy, that she knew "a few" Hueytown police officers, and that she had driven by the scene of the murder, Bill's Farmhouse, a restaurant in Hueytown, on the night of the murder, and had asked persons present what had happened. R. 70-71. She then stated as follows: "I think I remember that someone had gone out to take the trash out the back door and someone came out behind and forced his way in and someone was shot. [I remember] [m]y boyfriend saying there was a BOLO out for five or six black males in a small car." R. 71. M.T. further stated that she thought she had made up her mind about what had happened in the crime, but that she had never heard anyone mention the names of those persons allegedly involved. R. 71. The trial judge then asked M.T. the following question: "Do you feel you could give [the appellant] a fair trial in spite of what you heard or would it affect your ability? What if you heard the evidence and didn't think the [S]tate proved it. Would you have a hard time returning a guilty verdict?" R. 71-72. M.T. responded,"I think I could be fair." R. 72. (Emphasis added.)
When cross-examined by the appellant's counsel shortly after she had stated that she could be fair, M.T. stated that she would believe what her boyfriend, a sheriff's deputy, told her about the crime. R. 72. The appellant's counsel then asked the following leading questions:
 "[APPELLANT'S COUNSEL]: . . . [W]ouldn't that make it a little difficult to really sit on the jury in this case, even the fact that you drove by there that very night and saw, knowing someone was killed and seeing police cars and you knew the people. Wouldn't that make it difficult looking and searching yourself?
"[M.T.]: Well, I see your point.
"[APPELLANT'S COUNSEL]: It would, wouldn't it?
"[M.T.]: I think it would, yeah."
R. 72-73.
The questions from the appellant's counsel did not define the level of difficulty that M.T. might have were she to sit on the jury, and M.T.'s response to those questions could be construed to mean either that she would find it so difficult to sit on the jury that she could not give a fair trial, or (given her previous statement that she could be fair) that she would find it difficult to sit on the jury but that she could still be fair.
Judge Bowen, writing for the Court in Morrison v. State,601 So.2d 165 (Ala.Cr.App. 1992), stated:
 "Decisions regarding '[t]he clarity of the questions propounded' are also within the discretion of the trial court. [Citation omitted.] As the United States Supreme Court has observed:
 " 'It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination techniques that frequently are employed . . . [during voir dire]. . . . Also, unlike witnesses, *Page 1271 
prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. . . . The trial judge may properly choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.'
 "Patton v. Yount, 467 U.S. 1025, 1039, 104 S.Ct. 2885, 2893, 81 L.Ed.2d 847 (1984).
 " 'While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. . . .
 " 'Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. This determination . . . is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge.'
 "Knop [v. McCain], 561 So.2d [229,] at 232 [(Ala. 1989)] (citations omitted) (emphasis added)."
601 So.2d at 169. Given that M.T.'s response to the questions from the appellant's counsel was open to different interpretations, we find that the trial court did not abuse its discretion in not granting the appellant's challenge for cause as to M.T.
Finally, as to B.A. and C.S., the appellant argues, as the defendant argued in Youngblood v. State, 656 So.2d 385
(Ala.Cr.App. 1993), "that the trial court erred in striking for cause a prospective juror who expressed his beliefs against the death penalty[, C.S.,] and not striking a prospective juror who expressed his views in favor of the death penalty[, B.A.].Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968)." Youngblood, 656 So.2d at 389. This claim is without merit, because the appellant was sentenced to life imprisonment without parole. See Youngblood. See also Agee v.State, 465 So.2d 1196, 1201 (Ala.Cr.App. 1984) ("Witherspoon. . . is not applicable in instances where the defendant/appellant has been sentenced to life without parole rather than death").
 III.
The appellant contends that he was tried by a jury that was more prone to convict him because "[t]he trial court excused every person [who] voiced opposition to the death penalty being imposed." Appellant's brief at 30. This claim is without merit. "In Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758,90 L.Ed.2d 137 (1986), the [United States] Supreme Court held that the Constitution does not prohibit states from 'death qualification' of juries in capital cases and that so qualifying a jury does not deprive a defendant of an impartial jury. 476 U.S. at 173, 106 S.Ct. at 1764-65. Alabama courts have consistently held likewise. See Williams v. State,556 So.2d 737 (Ala.Crim.App. 1986), rev'd in part, 556 So.2d 744
(Ala. 1987); Edwards v. State, 515 So.2d 86, 88
(Ala.Crim.App. 1987); Martin v. State, 494 So.2d 749 (Ala.Crim.App. 1985)." Sockwell v. State, 675 So.2d 4, 18 (Ala.Cr.App. 1993).
 IV.
The appellant contends that the trial court erred in allowing the State to elicit testimonial evidence concerning the appellant's post-arrest silence. See Doyle v. Ohio,426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
The record reflects that, while in custody, the appellant gave three tape-recorded statements in a span of shortly over two hours, and that he was given Miranda[1] warnings before he gave each statement. The appellant objects to a comment made at trial by Fairfield Police Officer Rubin Wilkinson in response to questioning by the prosecutor. That comment is emphasized in the following excerpt from Officer Wilkinson's trial testimony, in which he is describing events that took place following the appellant's second statement:
 "Q: And what occurred while you were at the police station?
 "A: I went in there and asked for Sgt. Rice. I was told he was in [an] interview. *Page 1272 
I saw Officer Alexander and went back to where he was.
"Q: And what happened next?
 "A: There was a subject sitting back there with him. I asked Officer Alexander was he the person they picked up from the high school and he said yes.
"Q: And who was that individual?
 "A: It was — introduced myself to him, Nicholas Wilkerson.
 "Q: And what occurred after that? What happened next?
 "A: I asked him did he want to talk to me and he said 'No.'
 "MR. JAFFE [appellant's counsel]: I object — I need to make an objection concerning that. That's — I do object to that comment as a violation of the Defendant's Fifth Amendment [rights]. I do object to that comment.
"THE COURT: Overrule your objection, Mr. Jaffe.
 "Q: All right. Go ahead and — let me repeat the question. The individual back there was the defendant in this case, Nicholas Wilkerson?
"A: Yes, sir.
"Q: What happened at that time?
 "A: After he told me that I stayed back there and talked to Officer Alexander, [whom] I had known for a couple years. Before that he originally worked at Fairfield. I stayed back there talking to him.
"Q: And what happened?
 "A: After Alexander went to another part of [the] police department, Mr. Wilkerson asked me where I worked at and I told him [the] Fairfield Police [D]epartment. He asked me why I was there. I told him that I was — had helped and assisted Hueytown in this case and developed information about this case and that was the reason he was there now.
"Q: And what happened after that?
 "A: He asked me for a cup of water. I told him he would have to wait until Officer Alexander got there.
"Q: And then what happened?
 "A: Officer Alexander came back there and told him — asked could I get a cup of water for Mr. Wilkerson and he said yes. He went back to another part of [the] building. While he was gone Mr. Wilkinson said[,] 'I need to talk to you.' I told him he would have to wait until Officer Alexander got back.
 "Officer Alexander got back with another officer. I looked at Mr. Wilkerson [and said], 'Tell him what you just told me.' And he looked at them and said, 'I need to talk to him,' [and] pointed to me."
R. 762-64. (Emphasis added.) Officer Wilkinson's subsequent testimony reveals that he then gave the appellantMiranda warnings and the appellant then gave his third taped statement. R. 764-78.
In Greer v. Miller, 483 U.S. 756, 107 S.Ct. 3102,97 L.Ed.2d 618 (1987), the United States Supreme Court "clarified that 'the holding of Doyle is that the Due Process Clause bars "theuse for impeachment purposes" of a defendant's postarrest silence.' " United States v. Stubbs, 944 F.2d 828, 834 (11th Cir. 1991), quoting Greer, 483 U.S. at 763, 107 S.Ct. at 3108, in turn quoting Doyle, 426 U.S. at 619, 96 S.Ct. at 2245. Furthermore, "[w]hile a single comment alone may sometimes constitute a Doyle violation, the Supreme Court's opinion inGreer makes clear that a single mention does not automatically suffice to violate defendant's rights when the government does not specifically and expressly attempt to use — as was attempted in Doyle and Greer — the improper comment to impeach the defendant. See Lindgren v. Lane, 925 F.2d 198, 201
(7th Cir. 1991)." Stubbs, 944 F.2d at 835. (Emphasis in original.) In Lindgren, supra, the United States Court of Appeals for the Seventh Circuit found as follows: "At trial the prosecutor never called attention to the petitioner's silence. The defendant simply responded that he didn't 'wish to say any more' at the tail end of a compound answer to a question by the police officer. Consequently, no Doyle violation occurred." 925 F.2d at 201. See also Mathenia v. Delo, 975 F.2d 444, 452 (8th Cir. 1992), cert. denied, 507 U.S. 995, 113 S.Ct. 1609,123 L.Ed.2d 170 (1993) (testimony by officer that defendant did not make a statement to him at the time of his arrest not a comment on defendant's post-arrest *Page 1273 
silence because the testimony was " 'merely preliminary to the admission into evidence of [Mathenia's] videotaped statement' "); Rowan v. Owens, 752 F.2d 1186, 1190 (7th Cir. 1984), cert. denied, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 691 (1986) (testimony by officers that defendant stated "he didn't want to say anything else" at conclusion of interrogation not a comment on defendant's post-arrest silence because it simply indicated the end of the interrogation and the testimony was not emphasized so "as to invite the jury to infer that [the defendant] had decided to 'clam up' after realizing he was incriminating himself").
Our review of the record reveals that the comment by Officer Wilkinson to which the appellant objects was never mentioned or alluded to again at trial by the prosecutor. The statement was not specifically elicited by the prosecutor and appears to be nothing more than part of Officer Wilkinson's narrative of the events leading to the making of the appellant's third taped statement. Clearly, the comment did not constitute an improper comment on the appellant's post-arrest silence for purposes ofDoyle.
 V.
The appellant contends that the trial court erred in refusing to give jury charges on reckless murder, robbery, and criminally negligent homicide. The State argues that this issue is procedurally barred from appellate review because the appellant's counsel stated at the conclusion of the trial court's oral charge, "I don't have any exceptions to the [c]ourt's oral charge," R. 1040, and because, the State asserts, the appellant raises new grounds in support of his argument on appeal.
Rule 21.2, A.R.Crim.P., provides: "No party may assign as error the court's . . . failing to give a written instruction . . . unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." In Molton v. State,651 So.2d 663 (Ala.Cr.App. 1994), Presiding Judge Bowen, writing for the Court, emphasized that Rule 21.2 requires only that objections be made "before the jury retires." Judge Bowen further stated in Molton: "[W]here . . . a defendant clearly objects at the charge conference to the trial court's refusal to give a written requested charge and states specific reasons for that objection, he is not required to renew his objection at the close of the oral instructions to preserve that issue for appellate review." 651 So.2d at 666.
The record contains the transcript of the charge conference that was held before closing arguments in the appellant's case. At the beginning of the conference, the trial judge told the appellant's counsel that he would entertain argument on counsel's written requested charges of manslaughter and criminally negligent homicide. The appellant's counsel then asked if he could recall the appellant's expert witness, Dr. Alan Blotcky, and renewed a request that he be allowed to ask Dr. Blotcky's opinion as to whether the appellant possessed the ability to form the intent to commit murder or the intent to commit robbery, in light of evidence presented at trial that the appellant was intoxicated. (See Part X of this opinion.) After the trial judge heard argument on counsel's request to recall Dr. Blotcky, he refused to change his previous ruling disallowing the questioning. The following then occurred:
 "MR. JAFFE [appellant's counsel]: Yes, sir, I understand. In light of that, of course, we do rest finally. Judge, the only argument I would make on — the only argument I'm going to make on the lesser included offense is that I think that the alcohol, there is evidence before the court that the alcohol consumption and drug consumption of Nicholas Wilkerson nullifies the specific intent or the jury question nullifies the specific intent to commit both murder, straight murder, the intent to commit capital murder and also robbery.
 "And also I will ask the jury to be charged on, in addition, I know the court's indicated it was going to charge on felony murder, capital murder, and manslaughter. And I would ask the court to expand that to robbery and criminal negligent homicide and straight murder. *Page 1274 
 "THE COURT: All right. I will deny your request for — what evidence do you have, Mr. Jaffe, there was no robbery.
 "MR. JAFFE: No, sir, it's just the specific criminal intent to commit robbery. He was so intoxicated to the point of [insanity] where he was so intoxicated he couldn't form that intent. If there is no intent then there is no robbery. There is all the physical elements, but there is still no offense, any more or less than there would be if it was just murder.
 "THE COURT: I'm not sure that's a correct statement, but I will note your objection."
R. 950-52. (Emphasis added.)
On appeal, the appellant states that the ground for his objection at trial was that "[i]f the jury found that [the appellant] lacked the specific intent to commit robbery, then the lesser included offenses were warranted as there would be no conviction of capital murder or felony murder." Appellant's reply brief at 19. While the appellant's counsel's objection to the court's failure to give his requested charges was timely, it was not made with the required specificity. " 'Defendant must object specifically to each of the charges refused, . . . and the grounds assigned must be specific.' " Kinder v. State,515 So.2d 55, 62 (Ala.Cr.App. 1986) (Citation omitted.). InMolton, supra, we held that defense counsel's objection at a charge conference to the trial court's refusal to give a requested charge preserved the issue for our review. When defense counsel objected in Molton, however, he also "argued that the evidence supported such a charge." 651 So.2d at 665. Here, the appellant's counsel made no such argument, and instead maintained that the requested charges were warranted simply because the evidence was not sufficient to support a conviction of the capital offense of murder-robbery. Moreover, the appellant's argument that he lacked the specific intent to commit robbery only contradicts any argument that the evidencesupported a charge on robbery, and the appellant's counsel never specified the type of murder or degree of robbery that he was requesting a charge on. See Daugherty v. State,527 So.2d 1364, 1365 (Ala.Cr.App. 1988) (holding, in part, that the issue that the trial court erred in refusing to charge on lesser included offenses was not properly preserved because "counsel merely requested an 'instruction on a lesser charge of assault'; the record fails to reflect that counsel specified any degree of assault or any subsection of any degree").
We further agree with the State's assertion that the appellant raises new grounds on appeal. For the first time, the appellant argues that his requested charges should have been given because they were supported by the evidence. Therefore, this issue is procedurally barred from appellate review for this reason as well. Wasp v. State, 647 So.2d 81 (Ala.Cr.App. 1994).
Even if the appellant had preserved this issue for appellate review, we would not find reversible error. Because the trial court charged the jury on capital murder, felony murder, intentional murder, reckless manslaughter, and intoxication, and the jury convicted the appellant of the higher offense of capital murder, any error in the trial court's failure to charge the jury on reckless murder, robbery, and criminally negligent homicide was harmless. Moore v. State, 647 So.2d 43,45-46 (Ala.Cr.App. 1994); Brown v. State, 623 So.2d 416, 420
(Ala.Cr.App. 1993); Ex parte Jordan, 486 So.2d 485, 489 (Ala. 1986). See also Gaddy v. State, [Ms. CR-90-1429, May 26, 1995] ___ So.2d ___, ___ (Ala.Cr.App. 1995).
 VI.
The appellant contends that in two instances the prosecutor engaged in improper conduct.
 A.
The appellant complains of the prosecutor's asking him during cross-examination whether he told "anybody that the old man [the murder victim] deserved it." R. 938. The appellant argues that this question was not supported by the evidence and was asked in bad faith. In Wysinger v. State, 448 So.2d 435
(Ala.Cr.App. 1983), Presiding Judge Bowen, writing for this Court, stated: *Page 1275 
 " 'It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence.' Young v. State, 363 So.2d 1007, 1012
(Ala.Crim.App. 1978); Bezotte v. State, 358 So.2d 521, 525 (Ala.Crim.App. 1978). . . .
 "Laying prejudicial allegations before the jury 'by dint of cross-examination without being prepared to prove them is generally regarded as reversible error.' United States v. Brown, 519 F.2d 1368, 1370 (6th Cir. 1975). It is improper for the prosecutor 'to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth.' United States v. Harris, 542 F.2d 1283, 1307 (7th Cir. 1976); 6 J. Wigmore, Evidence Section 1808 (Chadbourn rev. 1976)."
448 So.2d at 438. See also Daniel v. State, 534 So.2d 1122
(Ala.Cr.App. 1988); Tomlin v. State, 591 So.2d 550, 558
(Ala.Cr.App. 1991) ("[q]uestions should not be framed so as to assume or suggest facts which are not supported by the evidence"), citing White v. State, 498 So.2d 396 (Ala.Cr.App. 1986) and Charles W. Gamble, McElroy's Alabama Evidence § 121.06 (4th ed. 1991). "[W]hen, as in this case, the prosecution asks damning questions that go to a central issue in the case, these questions must be supported by the evidence available or inferable, see [United States v.] Jungles, 903 F.2d [468,] at 478-79 [(7th Cir. 1990)], from the trial record." United States v. Elizondo, 920 F.2d 1308, 1313 (7th Cir. 1990).
The record reflects that Richard Flowers, a high school classmate of the appellant's, testified that at school, after the crime had occurred, he overheard the appellant talking with some of his accomplices about the crime and that the appellant said, "[t]hat nigger deserved it." R. 632-34. This evidence provided sufficient support for the prosecutor's question as to whether the appellant had told "anybody that the old man deserved it." R. 938.
 B.
The appellant complains that the prosecutor's comment during closing argument that the handgun used to commit the murder was the appellant's and that it had been retrieved from the appellant's house on the night of the murder was likewise not supported by the evidence. However, testimony was presented showing that the appellant had the opportunity to get the gun from his house. The appellant testified that he left school at 3:35 p.m. on the day of the crime and went home. He said that his accomplices arrived at his house in an automobile after 4:00 p.m., and that he left in the car with them at approximately 6:00 p.m. The appellant testified that when he left, he intentionally misled his mother by telling her that he was going to play basketball. In addition, testimony was presented that tended to show that the appellant was familiar with guns generally, and with the murder weapon in particular. While the appellant testified that he first saw the "nine millimeter," R. 860, when it was handed to him by one of his accomplices after they had arrived at the restaurant in Hueytown where the robbery-murder occurred, he also stated that he knew how the gun operated and, in fact, testified at length about how to cock a "nine millimeter."
Here, as in Wright v. State, 641 So.2d 1274 (Ala.Cr.App. 1993).
 "The prosecutor's comment was a reasonable inference from the evidence. 'The test of a legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury.' Ward v. State, 440 So.2d 1227, 1230 (Ala.Cr.App. 1983). 'Counsel for both the State and [the] defendant are allowed wide latitude in drawing reasonable inferences from the evidence in their closing arguments. A prosecutor as well as defense counsel has a right to present [her] impression from the evidence, if reasonable, and may argue every legitimate inference.' Manigan v. State, 402 So.2d 1063, 1072
(Ala.Cr.App.) (citations omitted), cert. denied, 402 So.2d 1072 (Ala. 1981). 'A prosecutor may express her opinion concerning reasonable inferences, deductions, and conclusions to be drawn from the facts in evidence, as long as she *Page 1276 
does not express an opinion as to the defendant's guilt. Sams v. State, 506 So.2d 1027, 1029
(Ala.Cr.App. 1986).' Cross v. State, 536 So.2d 155, 160
(Ala.Cr.App. 1988)."
641 So.2d at 1282.
 VII.
The appellant contends that the trial court erred in admitting a diagram of the crime scene. He specifically argues that: "1) the diagram was not accurate and the two major components, the body and [a] dish cart, were not in the same place [as at the time of the crime]; and 2) the diagram contained the conclusions and opinions as to the placement of the body by a non-expert witness." Appellant's brief at 43.
However, the record shows that the State's second and third witnesses used the diagram that the appellant complains of, without objection, to illustrate their testimony, specifically pointing out the location on the diagram of the body and the dish cart. The police officer who created the diagram subsequently testified and explained how he created the diagram, describing his positioning of the victim's body and the dish cart on the diagram based on photographs of the crime scene. The appellant's counsel waited until three more witnesses testified for the State before objecting to the diagram and asking the trial court to "reconsider the admissibility" of the diagram. R. 718. Any error in the admission of the diagram into evidence was harmless because it was merely cumulative to the testimony of these witnesses.Reese v. City of Dothan, 642 So.2d 511 (Ala.Cr.App. 1993).
 VIII.
The appellant contends that the trial court erred in admitting a videotape of the crime scene made by the police almost four months after the crime occurred.
The appellant testified at trial that on the night of May 15, 1992, armed with a handgun, he and two accomplices entered Bill's Farmhouse, a restaurant in Hueytown, through the back door, which opened into the restaurant's kitchen. According to the appellant, he and his accomplices then proceeded into the dining area through a swinging door. Once in the dining area, the appellant ordered William Wesson, the murder victim, who was talking on a wall telephone near the swinging door, to lie on the floor. The appellant testified that he straddled Mr. Wesson, who was lying face-down, took his wallet, and then stood up. The appellant testified that one of his accomplices, who had gone to another part of the restaurant, returned and said, "let's go," and then ran through the swinging door into the kitchen and out the back door of the restaurant, followed by the appellant's other accomplice. The appellant testified that he then backed up toward the swinging door, covering Mr. Wesson with his gun. The appellant testified that when he got near the door, which was still swinging, the door hit his arm, accidentally causing his gun to fire and killing Mr. Wesson.
Mr. Wesson's wife, Maxine Wesson, who was working at the restaurant as the cashier at the time of the crime, testified at trial that she was standing by the cash register counting money when she heard several people running around and yelling. A man armed with a shotgun appeared, ordered her to the floor, and held her there at gunpoint. According to Mrs. Wesson, after a time, the man said, "Let's go." She said she then heard the swinging door open and hit the dish cart that always sat in the dining area, next to the door, and a couple of seconds after hearing the door hit the cart, she heard a gunshot.
The videotape depicted a police officer pushing the swinging door with increasing force until it hit the dish cart. The State was attempting to show how the swinging door had hit the dish cart, as testified to by Mrs. Wesson. The trial court admitted the videotape through the testimony of Hueytown Police Officer Jimmy Brown, the officer who made the videotape, under the "pictorial communication" theory, one of two theories by which the admissibility of videotapes is ordinarily analyzed. See Ex parte Rieber, 663 So.2d 999 (Ala. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). " '[W]hen a qualified and competent witness can testify that the sound recording or other medium accurately and reliably represents *Page 1277 
what the witness sensed at the time in question, then the foundation required is that for the "pictorial communication" theory.' " Id. at 1009, quoting Ex parte Fuller, 620 So.2d 675,678 (Ala. 1993) (setting out the requirements for the admissibility of videotapes). The appellant asserts that the admissibility of the videotape should not have been analyzed using the ordinary requirements for the admissibility of videotapes but rather using the requirements for the admissibility of experiments.
"Experiments involve tests carried out before trial and the results of which are offered in evidence through the testimony of witnesses who either experienced or observed them." Charles W. Gamble, McElroy's Alabama Evidence § 81.01(1) (4th ed. 1991). "[E]vidence of an experiment, conducted out of court and having probative value on a matter in issue, is admissible if the conditions of the experiment were substantially similar to the conditions existing at the time of the occurrence involved in the litigation." Gamble, supra at § 81.02(2).
In Morgan v. State, 518 So.2d 186 (Ala.Cr.App. 1987), this Court held that a videotape of a reenactment of a homicide made three days after the homicide was properly admitted under the "pictorial communication" theory over the appellant's objection that the " 'room [depicted in the videotape] was not the same size, did not have the same furnishings, and did not have the same physical environment' as the scene of the shooting." 518 So.2d at 189. While the videotape in the instant case could be considered a reenactment of part of the crime, it could also be considered a recorded depiction of a test performed by the State. We find the following discussion of experiments instructive:
 "On occasion, counsel may wish to go further and show the fact finder relevant tangibles in motion or processes in which relevant tangibles play or played some role. Examples could include demonstrations reenacting a crime or tort, demonstrations that a certain event could or could not have happened as asserted, and demonstrations that a relevant tangible could or could not behave or perform as asserted."
William A. Schroeder, Jerome A. Hoffman, Alabama Evidence, § 11-5, p. 562 (2d ed. 1993). Because the videotape's primary value to the State was to demonstrate to the jury that it was actually possible for the swinging door to strike the dish cart as Mrs. Wesson testified, we will analyze its admissibility as an experiment.
The appellant argues that the conditions of the experiment in this case were not the same as the conditions at the time of the crime because, he says, the police moved the dish cart closer to the swinging door so that the door would hit it. Nothing in the record supports this contention. Officer Brown, who made the videotape, testified that he did not recall whether the cart had been repositioned. More importantly, the owner of the restaurant, Bill Wesson, the murder victim's son, testified that the cart was in the same position in the videotape as it was at the time of the crime. The conditions of the experiment in this case were substantially similar to the conditions at the time of the crime. The trial court did not err in admitting the videotape.
Even if the trial court did err in admitting the videotape, the error was harmless because the videotape was merely cumulative to Mrs. Wesson's testimony that she heard the swinging door strike the dish cart. Reese v. City of Dothan,642 So.2d 511 (Ala.Cr.App. 1993).
In conjunction with this issue, the appellant also argues that he was denied the opportunity to rebut the State's experiment with his own test, because, he says, the State failed to timely provide him with the videotape. However, as the State correctly points out, when the videotape was offered into evidence, the appellant's counsel stated, "I just saw the video provided to me a few weeks ago at least. I have no qualm with that." R. 549. The appellant maintains that he preserved this claim when his counsel stated that the videotape was "a highly prejudicial version of how this shooting occurred without a chance for us to rebut it, or cross-examine it," R. 564, but it is clear from the context in which the appellant's counsel's statement was made that counsel was directing an objection not at the timeliness of the *Page 1278 
State's production of the videotape but at the purported fact that no witness could testify to whether the dish cart had been repositioned for purposes of making the videotape. Thus, this claim is procedurally barred from appellate review, because it is raised for the first time on appeal. Pate v. State,601 So.2d 210, 213 (Ala.Cr.App. 1992).
 IX.
The appellant contends that the trial court erred in failing to suppress the three taped-recorded statements he made to the police. He argues that, for various reasons, the statements were involuntary. He also argues that his third statement should have been suppressed because it was made after he told police "that he did not want to speak to law enforcement." Appellant's brief at 51. (See Part IV of this opinion.)
The appellant filed motions to suppress his statements in the juvenile court during proceedings on the State's motion to transfer him to the circuit court for prosecution as an adult; he filed similar motions to suppress in the circuit court. C.R. 9, 15, 35, 89-90, 93-94. Although he raised several claims in these motions, including one challenging the voluntariness of his statements, he did not raise the claim now raised — that his third statement should have been suppressed because it was made after he told police that he did not want to speak to law enforcement. Nor did he raise this claim at trial. Therefore, this claim is procedurally barred from appellate review. Ayersv. State, 659 So.2d 177, 180 (Ala.Cr.App. 1994) (" 'The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880,882 (Ala. 1987). 'A defendant is bound by the grounds of objection raised at trial and cannot change them on appeal.'Leonard v. State, 551 So.2d 1143, 1151 (Ala.Cr.App. 1989)").
With regard to the appellant's contention that his statements were involuntary, the record shows that the trial judge was furnished with a transcript of testimony taken during the juvenile transfer proceedings and that the parties submitted the voluntariness issue to the trial judge on that transcript. R. 6-8, 21-22, 347-49, 767-74. However, the transcript of the juvenile proceedings is not contained in the record on appeal. " 'It is the appellant's duty to provide this court with a complete record on appeal.' Knight v. State, 621 So.2d 394
(Ala.Cr.App. 1993). See also Holder v. State, 584 So.2d 872
(Ala.Cr.App. 1991). We cannot predicate error on a silent record. Hutchins v. State, 568 So.2d 395 (Ala.Cr.App. 1990)."Roberts v. State, 627 So.2d 1114, 1116 (Ala.Cr.App. 1993) (no violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), where no transcript of the voir dire examination was contained in the record).
 X.
The appellant contends that the trial court erred by not allowing him to question his expert witness, Dr. Alan Blotcky, a clinical psychologist who performed a court-ordered evaluation of the appellant, as to whether the appellant had the ability to form the requisite intent to commit murder. During an offer of proof in the trial court, the appellant's counsel explained that Dr. Blotcky would testify that the appellant had a diminished capacity to form the requisite intent to commit murder because of the combined effect of intoxication at the time of the crime, borderline intellectual function, and mental disease or defect (i.e., passive-aggressive personality). "It has been held traditionally in this country that an expert witness cannot give his opinion upon an ultimate issue in the case." Charles W. Gamble, McElroy's Alabama Evidence § 127.01(5)(d) (4th ed. 1991). More specifically, "[a] witness, be he expert or lay, cannot give his opinion when such constitutes a legal conclusion or the application of a legal definition." Gamble, supra, at § 128.07.
The appellant refers us to our opinion in Bailey v. State,574 So.2d 1001, 1003 (Ala.Cr.App. 1990), where we stated: "[T]he modern trend is in the direction of permitting experts to give their opinions upon ultimate issues, of which the final determination rests with the jury." The modern trend culminated in the adoption of Rule 704 of the Federal Rules of *Page 1279 
Evidence, which abandoned the ultimate issue rule.[2] C. Gamble, supra, at § 127.01(5)(d). However, subsection (b) of Rule 704 contains the following important limitation:
 "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto."
Stated differently,
 "Rule 704(b) does not prohibit an expert witness from stating his opinion and reviewing facts from which a jury could determine whether a defendant had the requisite criminal intent. . . . Rather, the rule prohibits an expert witness from testifying that a defendant did or did not possess the requisite mental intent at the time of the crime."
United States v. Orr, 68 F.3d 1247, 1252 (10th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 747, 133 L.Ed.2d 695
(1996). See also United States v. Frisbee, 623 F. Supp. 1217,1222-223 (N.D.Cal. 1985) ("the defendant's experts will not be allowed to state an opinion or inference as to whether the defendant did or did not form a specific intent to kill . . . No testimony directly or indirectly opining on the issue of specific intent will be allowed"). Thus, even the more permissive federal rule does not allow an expert witness to state an opinion as to the ultimate issue of whether a defendant had the requisite mental state to commit murder. Here, it is clear from the record that the appellant sought only to elicit Dr. Blotcky's opinion on the issue of specific intent. Therefore, even under the modern trend, the appellant's argument that Dr. Blotcky should have been allowed to testify concerning the appellant's intent fails.
This Court addressed an almost identical issue in McCowan v.State, 412 So.2d 847 (Ala.Cr.App. 1982). In McCowan, citingEx parte Dial, 387 So.2d 879 (Ala. 1980), we held that the trial court did not err in disallowing the appellant's expert witness from stating "the legal conclusion that the appellant could not have formed the requisite intent for murder," and had properly allowed the expert to testify "that, hypothetically, one suffering from an 'isolated explosive disorder' would not be able to 'knowingly and intentionally appreciate what he was doing.' " 412 So.2d at 849. (Emphasis added.) We are aware of no case holding that a witness can testify as to whether the defendant has the ability to form the requisite intent to commit the charged offense. We find no error on the part of the trial court in disallowing Dr. Blotcky from testifying as to the appellant's ability to form the requisite intent to commit murder. McCowan.
For the reasons set forth above, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] We note that Rule 704 of the Alabama Rules of Evidence, which became effective in Alabama courts January 1, 1996, after the appellant's case was tried, is a restatement of the ultimate issue rule. The Advisory Committee's Notes to Rule 704 state:
"The adoption of Rule 704 constitutes a rejection of the corresponding federal rule, under which the ultimate issue rule is abandoned. See Fed.R.Evid. 704(a).
"There is no intent that adoption of Rule 704 should abrogate preexisting case law liberalizing the application of the ultimate issue rule."